

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

NO. AP-74,980

BARNEY RONALD FULLER, JR., Appellant

v.

THE STATE OF TEXAS

ON DIRECT APPEAL FROM CAUSE NO. 04-CR-27
IN THE 349ᵗʰ DISTRICT COURT
HOUSTON COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined. MEYERS, J., filed an opinion in which he concurred in the result as to points of error ten and eleven and otherwise joined the opinion of the Court.

**O P I N I O N**

In July 2004, the appellant was convicted of the May 14, 2003, capital murder of

Nathan and Annette Copeland.[1] The appellant pleaded guilty in front of the jury, and based

on the jury's answers to the special issues set forth in Texas Code of Criminal Procedure

---

[1] TEX. PENAL CODE ANN. § 19.03(a)(7).

Article 37.071, sections 2(b) and 2(e), the trial judge sentenced the appellant to death.[2]

Direct appeal to this Court is automatic.[3]  After reviewing the appellant's forty-four points of error, we find them to be without merit.  Consequently, we affirm the trial court's judgment and sentence of death.

## STATEMENT OF FACTS

The appellant, Barney Ronald Fuller, Jr., was fond of firing weapons on his property in rural Houston County, despite repeated complaints from his neighbors.  Perhaps the most vocal of his neighbors, Nathan and Annette Copeland, had a dispute with the appellant regarding his alleged shooting of the Copeland's electric transformer.  The dispute escalated with the appellant ultimately being charged with making terroristic threats against Annette after he told her over the telephone, "Happy New Year, I'm going to kill you."

On May 13, 2003, the appellant received a letter from the court regarding the terroristic threat charges against him.  The appellant was furious and began drinking heavily.  At around 1:30 a.m. on May 14, 2003, the appellant left his home and traveled the short distance on foot to the Copeland home.  The appellant fired approximately sixty rounds from an AR-15 rifle into the Copeland home from outside, changing the magazine on his rifle three times.  He then broke down the back door and made his way to the master bedroom

---

[2] Art. 37.071, § 2(g).  Unless otherwise indicated all references to Articles refer to the Code of Criminal Procedure.

[3] Art. 37.071, § 2(h).

where he fired several more shots with a pistol, reloading twice. He shot Nathan four times. The first shot was a fatal head wound from a rifle. The other three wounds, which were also classified as fatal, were from a pistol that was fired at Nathan's back from a distance of only one to three feet. Annette managed to call 9-1-1 from the master bath. The operator heard a man say, "Party's over, bitch," before hearing "a popping sound" and the line went dead. Annette was shot three times in the head with a pistol, once directly through her brain and twice through her facial bones.

Not satisfied with killing Annette and Nathan, the appellant found the room of their fifteen-year-old son, Cody, who heard his father screaming during the shooting. The appellant took aim at Cody and fired at least three times, all the while asking Cody why he was lying about him in court. Although bullets were later pulled from Cody's pillow, he escaped with only two shoulder wounds. The appellant then made his way to the room of eleven-year-old Courtney, but he could not find her in the dark. Before leaving the house, he turned on the kitchen stove.

Once the appellant left the Copeland home, Courtney waited five minutes before checking on Cody and her parents. She saw that her parents "would not make it." Cody attempted to call 9-1-1, but the house land line was dead. Courtney turned off the stove in the kitchen while Cody went to their parents' room to find their mother's mobile phone to call 9-1-1. After speaking with the 9-1-1 operator, Courtney called her grandparents to tell

them what had happened, and then she and Cody waited, pretending to be dead just in case the appellant returned.

Their grandparents arrived before any first responders and took the children to meet an ambulance that was en route for Cody. When law enforcement arrived at the Copeland home and began clearing the scene, they heard six rounds fired from the direction of the appellant's home. The appellant contacted 9-1-1 himself and told the operator that he would surrender. A SWAT team was assembled, and the appellant was arrested around midmorning.

## GUILTY PLEA IN FRONT OF THE JURY

In his first through third points of error, the appellant argues that the trial court lacked authority to impose the death sentence in the absence of a jury verdict form finding him guilty and therefore violated Texas Code of Criminal Procedure Article 1.13, the Due Process Clause of the Fourteenth Amendment, and the Sixth Amendment right to an impartial jury.

On the morning of trial, the appellant pleaded guilty to capital murder in front of the jury. After admonishing the appellant, the trial court accepted his guilty plea and found him guilty of capital murder. The court then instructed the jury that it would no longer be required to determine the appellant's guilt or innocence but would only be required to determine his punishment. The court conducted a punishment hearing, heard evidence of the offense, and charged the jury to find the appellant guilty and to answer the special issues. The forms given to the jury, however, did not include a verdict form for the jury to physically

mark that they found the appellant guilty; the forms included only sentencing forms for the two special issues. The appellant claims that he has been denied a trial by jury because the jury did not sign a verdict form indicating that the appellant is guilty of capital murder. These claims are without merit.

Article 1.13 sets out the requirements for waiver of a jury trial. Specifically, Article 1.13 requires that the defendant execute a written waiver made in person in open court with the consent and approval of the court and the prosecution, if the case is "for any offense other than a capital felony case in which the State notifies the court and the defendant that it will seek the death penalty." Article 1.13(b) states that the defendant may waive the right to jury trial only if the prosecution consents to the waiver in writing and in open court, if the case is "a capital felony case in which the attorney representing the State notifies the court and the defendant that it will not seek the death penalty." Because the State sought the death penalty, Article 1.13 is inapplicable to this case, and the appellant was required to be tried by a jury.

In *Williams v. State*,[4] this Court held that Williams' plea of guilty to a capital murder charge in front of the jury was not an illegal waiver of a jury trial but rather a trial by jury that essentially became a trial on punishment only.[5] This Court also took note of Williams' contention that Article 37.071 applies only to bifurcated trials and that a guilty plea in front

---

[4] 674 S.W.2d 315 (Tex. Crim. App. 1984).

[5] *Id*. at 318-19

of the jury is not a bifurcated trial.[6]  Williams argued that a defendant could not plead guilty

in front of the jury in a capital case.[7]  In a footnote, this Court responded that

> [t]he plea must be to a jury so as to comply with the limitations of Art[icle]
> 1.14.  Whether such a procedure, where a guilty plea is entered, is to be
> denominated unitary or bifurcated is moot: Art[icle] 37.071 governs all capital
> cases and it provides for a trial by jury upon the issues related to punishment.[8]

This Court noted that the procedure employed had the indicia of a bifurcated trial.[9]  Williams

pleaded guilty before the jury, and after the State presented evidence, the trial court instructed

the jury to find Williams guilty.[10]  Once the jury signed the verdict finding Williams guilty,

a separate punishment hearing was held after which the court submitted a charge to the jury

directing it to answer the three special issues.[11]

Four years later, citing to *Williams*, this Court formally declared that "a plea of guilty

before a jury in a capital case constitutes trial by jury whether such a proceeding be

denominated 'bifurcated' or 'unitary' in nature."[12]  In *Holland*, after the defendant pleaded

---

[6]  *Id.* at 318.

[7]  *Id.*

[8]  *Id.* at 319, n.2.

[9]  *Id*.

[10]  *Id*.

[11]  *Id*.

[12]  *Holland v. State*, 761 S.W.2d 307, 313 (Tex. Crim. App. 1988).

guilty in front of the jury, the trial court instructed the jury to find him guilty and directed it to consider the special punishment issues, all in one instrument.[13] The Court determined that this constituted a trial by jury.[14]

Similarly, in the instant case, the appellant pleaded guilty in front of the jury. After hearing evidence of the appellant's guilt for nine days, the trial judge instructed the jury, through both oral and written directives, to find the appellant guilty, but provided the jury with only the "Special Issues Verdict Forms." The question here is whether the jury needed to return a verdict form indicating the appellant's guilt in writing in order to declare that the appellant received a trial by jury.

This Court encountered a similar problem in *Brinson v. State*.[15] In *Brinson*, the appellant pleaded guilty to the charge of driving while intoxicated. The jury returned a verdict sentencing the appellant to two years in county jail without a formal declaration of his guilt, and the appellant argued that the verdict was insufficient.[16] Texas Code of Criminal Procedure Article 37.01 defines verdict as "a written declaration by a jury of its decision of

---

[13] *Id.*

[14] *Id.*

[15] 570 S.W.2d 937 (Tex. Crim. App. 1978).

[16] *Id.* at 938 (the verdict simply stated that the jury had "heretofore found the Defendant guilty.").

the issue submitted to it in the case."[17]  This Court held, "In all cases where a defendant enters a plea of guilty before a jury, no issue of the defendant's guilt is submitted to the jury."[18]  Pursuant to this logic, this Court declared

> [S]ince a verdict is 'a written declaration by a jury of its decision of the issue submitted to it in the case,' but the issue of guilt is not submitted to a jury when a defendant has pleaded guilty before it, a jury does not return a *verdict of guilt* in such a situation.[19]

Though not dealing with a capital case, *Brinson* supports a finding that a verdict on the guilt of a person who pleads guilty is not necessary, even in a capital case.[20]

The appellant also argues that the trial court's failure to require that the jury sign a verdict form finding him guilty of capital murder violates the Due Process Clause of the federal constitution.  But the United States Supreme Court has long held that a plea of guilty substitutes for a jury verdict of guilt.  As the Supreme Court stated in *Kercheval v. United States*,[21] "[a] plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction.  Like a verdict of a jury, it is conclusive.  More

---

[17]

TEX. CODE CRIM. PROC. ANN. art. 37.01 (Vernon 2006).

[18]

*Brinson,* 570 S.W.2d at 939.

[19]

*Id.*

[20]

In *Hamilton v. State*, No. 74,523 (Tex. Crim. App. Oct. 13, 2004) (Not designated for publication), this Court stated that, "by entering a plea of guilty before a jury and having a jury return a verdict regarding the special issues," an appellant is deemed to have received a trial by jury.

[21]

274 U.S. 220, 223 (1927).

is not required; the court has nothing to do but give judgment and sentence." Thus, a plea of guilty made to a jury is the functional equivalent of a jury verdict of guilty.[22] This is just as true in a capital-murder trial as in a non-capital criminal trial. When a defendant pleads guilty to a jury, the jury need not return any verdict of guilty. The case simply proceeds with a unitary punishment hearing.[23]

Here, the appellant pleaded guilty before the jury and the jury returned the special-issues verdict form. Pursuant to the foregoing cases, it is clear that the jury in this case was not required to return a verdict of guilty, since the guilt or innocence of the appellant was no longer an issue.[24] Points of error one, two, and three are overruled.

## COMPETENCE TO STAND TRIAL

In his fourth through sixth points of error, the appellant alleges that the trial court violated the Due Process Clause of the Fourteenth Amendment, the Fifth Amendment, and Article 46B.004 by failing to *sua sponte* order that the appellant be evaluated to determine whether he was competent to stand trial.

---

[22] *Id.*; *see also United States v. Woods*, 696 F.2d 566, 570 (8th Cir. 1982) ("once guilt has been established whether by plea or by verdict and nothing remains to be done except pass sentence, the defendant has been convicted within the intendment of Congress").

[23] *See Frame v. State*, 615 S.W.2d 766, 768 n.1 (Tex. Crim. App. 1981) (citing *Basaldua v. State*, 481 S.W.2d 851 (Tex. Crim. App. 1972)).

[24] We note that the trial court's actions did not create the clearest format for the jury to follow. It would be a better practice to continue the use of a verdict form prior to addressing sentencing issues to avoid any potential confusion, though this is not required.

In *Pate v. Robinson*,[25] Illinois conceded that "the conviction of an accused person while he is legally incompetent violates due process, and that state procedures must be adequate to protect this right."[26] The Supreme Court went on to determine that "where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing."[27] Under Texas law, a defendant is incompetent to stand trial if he does not have "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against" him.[28] A bona fide doubt is "a real doubt in the judge's mind as to the defendant's competency."[29] Evidence raising a bona fide doubt "need not be sufficient to support a finding of incompetence and is qualitatively different from such evidence."[30] Evidence is sufficient to create a bona fide doubt if it shows "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the

---

[25] 383 U.S. 375 (1966).

[26] *Id*. at 378.

[27] *Id*. at 385.

[28] Art. 46B.003

[29] *Alcott v. State*, 51 S.W.3d 596, 599, n.10 (Tex. Crim. App. 2001).

[30] *Id*.

defendant."[31]  If any evidence that suggests the defendant may be incompetent to stand trial comes to the trial court's attention, the trial court shall *sua sponte* "suggest that the defendant may be incompetent to stand trial" and then "determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial."[32]

The appellant argues that the evidence presented during trial should have suggested to the trial court that he may be incompetent to stand trial.  He points to defense counsel's opening statement regarding the appellant's possible mental illness, his refusal to provide the court with a reason for his guilty plea, his refusal to submit to an MRI examination of his brain, his withdrawal to his jail bunk in the days before trial, his long history of drug and alcohol abuse, and his bizarre behavior during the three months before his arrest.  None of this evidence, however, was sufficient by itself or taken together to create a bona fide doubt as to the appellant's ability to consult with his attorneys with a reasonable degree of rational understanding or as to his rational as well as factual understanding of the proceedings against him.

Because the appellant chose to absent himself during trial proceedings, the record does not contain much evidence demonstrating the appellant's ability to understand the trial proceedings.  However, one of the appellant's attorneys told the trial court that while he and

[31] *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003).

[32] Art. 46B.004

co-counsel had experienced some difficulties working with the appellant, they were able to work through the problems. In fact, the trial court stated that he found the appellant to be mentally competent. When questioned, the appellant's attorneys told the trial court that the appellant had been able to cooperate with them and had coordinated with them to develop a defense in his case. The appellant's assertion of incompetency, unsupported by facts or evidence, is not sufficient, by itself, to show the trial court erred in failing to *sua sponte* order him evaluated to determine his mentally competency. Points of error four, five, and six are overruled.

## VOLUNTARINESS OF THE GUILTY PLEA

In his seventh through ninth points of error, the appellant challenges the voluntariness of his guilty plea. Specifically, the appellant argues that, given signs that he may be mentally incompetent, the trial court did not properly admonish him in accordance with Article 26.13. The appellant also argues that his plea was in violation of *Boykin v. Alabama*[33] and *Brady v. United States*.[34]

It is a due process violation for a trial court to accept a guilty plea without an affirmative showing "spread on the record" that the guilty plea was intelligently and

---

[33] 397 U.S. 742 (1970).

[34] 395 U.S. 238 (1969).

knowingly made.[35] The record must "affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily."[36] Additionally, this Court has previously concluded that the admonishments embodied in Article 26.13(a) are not constitutionally required because their purpose and function are to assist the trial court in determining that a guilty plea is knowingly and voluntarily entered.[37]

The appellant was initially indicted on ten felony charges resulting from the events of May 14, 2003, and he was arraigned on those charges on September 12, 2003. At that time, the appellant attempted to plead guilty:

Appellant:  Can I plead guilty if I want to? That's my choice, right?

Counsel:    That's your choice.

Appellant:  You're lying to the man is all you're doing.

Court:      I'm sorry.

Counsel:    I would advise you not to at this point. We can discuss that later.

Court:      Yeah. I would encourage you not to say anything.

A new indictment was issued on February 25, 2004, alleging capital murder. On July 12, 2004, final pre-trial matters were discussed with both the State and the appellant

---

[35] *Boykin*, 395 U.S. 238.

[36] *Brady*, 397 U.S. 742.

[37] *Carranza v. State*, 980 S.W.2d 653, 656 (1998).

proceeding with the expectation of a full trial on guilt. The following day, the jury was seated, given instructions, and sworn. The State read the indictment to the appellant in the presence of the jury, and the trial court asked the appellant how he pled. The appellant responded, "Guilty, your Honor."

The trial court asked the jury to retire and then admonished the appellant as to the effect of his guilty plea, specifically explaining to him the range of punishment for capital murder. The trial court also inquired as to whether the appellant's guilty plea was being entered voluntarily and knowingly. The appellant stated that it was, and the appellant's counsel also told the court that the appellant understood the ramifications and the effect of his guilty plea.

The record shows that the trial court properly admonished the appellant regarding the range of punishment for the offense. Further, the record shows that the appellant "understandingly and voluntarily" made his plea. Points of error seven, eight, and nine are overruled.

## ADMISSION OF VIDEOTAPED STATEMENT

In points of error ten and eleven, the appellant alleges that the videotaped statement he gave to police was admitted in violation of his right to remain silent and his right to counsel during an interrogation. The appellant argues he was represented by counsel, but had not been told by officials that his attorney was en route to meet him at the sheriff's office and that his attorney had told officials to not interview the appellant without counsel present.

At the suppression hearing held regarding the videotaped statement, the appellant testified that, in the early morning hours following the murders of Nathan and Annette Copeland, he spoke with his father several times by phone. The appellant discussed with his father the need to contact the appellant's brother-in-law, Steven "Rocket" Rosen, a criminal defense attorney from Houston. The appellant's father eventually contacted Rosen, but the appellant was not aware his father had done so and did not speak with Rosen himself. At approximately the time the appellant was being arrested, Rosen faxed a letter to the Houston County Sheriff notifying him that the appellant was represented by counsel and instructing officials not to interview the appellant without Rosen's presence.

Officials in Houston County interviewed the appellant and obtained a video statement. According to Texas Ranger Sergeant James Huggins, who conducted the interview, the appellant waived his right to remain silent and to consult with an attorney or have one present during the interview. Huggins also testified that he did not learn of Rosen's fax until after he completed the interview, and the appellant testified that he did not speak with Rosen regarding representation until after the interview.

The appellant now alleges that he was drunk when he was interviewed on the morning of May 14, 2003, and was not able to voluntarily waive his rights. The appellant argues, therefore, that his statement was obtained in violation of the Fifth Amendment. Shane Calloway, the deputy who transported the appellant to the sheriff's office, testified that the appellant showed no signs of being drunk. Sergeant Randy Hargrove, who observed the

appellant being booked into the county jail, testified that the appellant did not appear intoxicated. Huggins, who obtained the statement from the appellant, also testified that he saw no signs that the appellant was drunk. On cross-examination during the suppression hearing, the appellant testified that he did not remember receiving or waiving his *Miranda* warnings, but did remember speaking with his father following the murders.

The appellant also argues that his statement was involuntary because he was not aware of Rosen's fax directing officials to not interview him. In *Moran v. Burbine*,[38] the United States Supreme Court clearly held that it is immaterial whether an attorney has attempted to intervene on behalf of an accused if the accused is unaware of the attorney's actions.[39] Officials are under no duty to cease an interview because an attorney asks them to inform the accused.[40] The events that were happening outside of the appellant's presence and that were completely unknown to him can have no bearing on his capacity to comprehend and knowingly waive his rights. The appellant made a voluntary decision to waive his rights to have counsel during his interview, and he was fully aware and comprehended the information conveyed to him in the required warnings. Points of error ten and eleven are overruled.

## FUTURE DANGEROUSNESS

---

[38] 475 U.S. 412 (1986).

[39] *Id*. at 428-29.

[40] *Id*.

In his twenty-first point of error, the appellant challenges the factual sufficiency of the evidence supporting the jury's determination regarding future dangerousness.[41] This Court has consistently declined to conduct a factual sufficiency review in this context, and the appellant's arguments do not persuade us to retreat from these holdings.[42] Point of error twenty-one is overruled.

In his twentieth point of error, the appellant challenges the legal sufficiency of the evidence supporting the jury's determination regarding the future dangerousness issue, particularly in light of the appellant's age of forty-four. In points of error twenty-two and twenty-three, the appellant argues that the trial court violated the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment's prohibition against cruel and unusual punishment by sentencing the appellant to death without legally or factually sufficient evidence to support the jury's answer to the future dangerousness special issue, especially given the appellant's age and the fact that he would be in prison for at least forty years or until he reached age eighty-four.

A jury may consider a variety of factors when determining whether a defendant will pose a continuing threat to society.[43] We must view all of the evidence in the light most

---

[41] *See* Art. 37.071 § 2(b)(1).

[42] *Renteria v. State*, 206 S.W.3d 689, 707 (Tex. Crim. App. 2006); *Russeau v. State*, 171 S.W.3d 871, 878 n.1 (Tex. Crim. App. 2005), *cert. denied*, 126 S. Ct. 2982 (2006).

[43] *See Wardrip v. State*, 56 S.W.3d 588, 594 (Tex. Crim. App. 2001); *see also Keeton v. State*, 724 S.W.2d 58, 61 (Tex. Crim. App. 1987).

favorable to the jury's finding and determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found beyond a reasonable doubt that the answer to the future dangerousness issue was "yes."[44]

Although the appellant pleaded guilty, the jury heard testimony regarding the extraordinary violence of the offenses against the Copeland family. The appellant committed an unprovoked nighttime attack against a family in their home, killing the parents and attempting to kill their two children. The aAppellant argues that the State was required to offer some further evidence to support the jury's future dangerousness finding. This Court, however, has previously found that the circumstances of an offense itself, if severe enough, may be sufficient to support an affirmative finding to the future dangerousness special issue.[45]

Nevertheless, the State did present further evidence regarding the appellant's future dangerousness in the form of testimony from psychologist Dr. Thomas G. Allen. Allen reviewed offense, forensic, and autopsy reports of the offense, witness statements, jail records, and documentation reflecting other incidents. Allen requested, but was denied, an interview with the appellant. Allen testified that he examined information about the offense, as well as the appellant's history, and then assessed pervasive issues and characteristics to determine whether there would be "energy or motivation to continue that kind of behavior

---

[44] *Ladd v. State*, 3 S.W.3d 547, 557-58 (Tex. Crim. App. 1999).

[45] *Connor v. State*, 67 S.W.3d 192, 199 (Tex. Crim. App. 2001).

in the future." Allen determined there would be in the appellant's case. Allen told the jury that the appellant is "capable of an intense level of very hostile, rage-filled violence" and "maintains a belief system that generates and sustains" violence, which "hasn't really diminished" since the offense.

A rational jury could determine beyond a reasonable doubt from this evidence that there was a probability that the appellant would commit criminal acts of violence in the future so as to constitute a continuing threat to society. Points of error twenty, twenty-two, and twenty-three are overruled.

## EXPERT WITNESS TESTIMONY

In points of error forty-one through forty-four, the appellant challenges the admission of testimony from the State's expert witness, Dr. Thomas G. Allen. The appellant alleges that Allen lacked the qualifications to testify regarding the appellant's future dangerousness and that Allen's testimony lacked scientific reliability.

To preserve error for appellate review, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court.[46] Failure to preserve error at trial forfeits the later assertion of that error on appeal.[47] In fact, almost

---

[46] TEX . R. APP . P. 33.1(a); *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999).

[47] *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999).

all error – even constitutional error – may be forfeited if the appellant failed to object.[48] We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence.[49] This is true even though the error may concern a constitutional right of the defendant.[50]

The appellant argues that a motion *in limine* filed to exclude psychiatric or psychological testimony regarding future dangerousness preserves these issues for review. A motion *in limine*, however, is a preliminary matter and normally preserves nothing for appellate review.[51] For error to be preserved with regard to the subject of a motion *in limine*, an objection must be made at the time the subject is raised during trial.[52]

The appellant made no objections to Allen's testimony at trial. As a result, the appellant has waived appellate review of any error associated with Allen's testimony. Points of error forty-one, forty-two, forty-three, and forty-four are overruled.

## CONSTITUTIONALITY OF THE
## TEXAS DEATH PENALTY SCHEME

---

[48] TEX . R. APP . P. 33.1(a); *Aldrich v. State*, 104 S.W.3d 890, 894-95 (Tex. Crim. App. 2003).

[49] *Saldano v. State*, 70 S.W.3d 873, 889 & nn.73 & 74 (Tex. Crim. App. 2002).

[50] *Id*.

[51] *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985).

[52] *Id*.

In points of error twelve, thirteen and fourteen, the appellant challenges the constitutionality of the future dangerousness special issue. In point of error twelve, citing to *Ring v. Arizona*[53] and *Apprendi v. New Jersey*,[54] the appellant argues that it was improper for his jury to have been instructed to determine beyond a reasonable doubt whether there is a probability that the appellant would commit acts of violence constituting a continuing threat to society. The appellant urges that "probability" should have been removed from the statutory language and the jury should have been instructed to determine beyond a reasonable doubt whether he would be a continuing threat to society. In points of error thirteen and fourteen, the appellant argues that Article 37.071 unconstitutionally instructs jurors to determine future dangerousness based on probability rather than the beyond-a-reasonable-doubt-standard. We have previously rejected these and similar arguments.[55] The appellant gives us no reason to revisit our prior decisions. Points of error twelve, thirteen, and fourteen are overruled.

In his fifteenth and sixteenth points of error, the appellant alleges that Article 37.071 violates the Eighth Amendment's prohibition against cruel and unusual punishment and the Due Process Clause of the Fourteenth Amendment because jurors were instructed to find him

---

[53] 536 U.S. 584 (2002).

[54] 530 U.S. 466 (2000).

[55] *See Robison v. State*, 888 S.W.2d 473, 481 (Tex. Crim. App. 1994); *see also Rayford v. State*, 125 S.W.3d 521, 533 (Tex. Crim. App. 2003), and *Kemp v. State*, 846 S.W.2d 289, 308-09 (Tex. Crim. App. 1992).

a future threat to "society" although he would remain incarcerated for a minimum of forty years, until he was at least 84 years old. The appellant argues that the trial court should have instructed the jury that the term "society," as used in the context of the special issue in this trial, means prison society for the next forty years, after which parole is a possibility. This Court has repeatedly stated that terms such as "society" require no special definition, and the appellant has provided us with no reason to revisit the issue here.[56] Points or error fifteen and sixteen are overruled.

In points of error seventeen through nineteen, the appellant argues that Article 37.071 violates the Eighth Amendment's prohibition against cruel and unusual punishment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment because the jury did not have the option to sentence the appellant to life without parole. This Court has previously considered and rejected these claims,[57] and the appellant has given us no reason to reconsider them here. Points of error seventeen, eighteen, and nineteen are overruled.

In his twenty-fourth point of error, the appellant complains that the mitigation special issue violated his due process rights because the burden of proving the issue was placed on the appellant rather than requiring that the jury find against the appellant under the beyond-a-

---

[56] *Blue v. State*, 125 S.W.3d 491, 504-05 (Tex. Crim. App. 2003); *Earhart v. State*, 877 S.W.2d 759, 767 (Tex. Crim. App. 1994).

[57]

*Arnold v. State*, 873 S.W.2d 27, 39-40 (Tex. Crim. App. 1993).

reasonable-doubt standard. This Court has previously rejected this claim, and the appellant has given us no reason to revisit the issue here.[58] Point of error twenty-four is overruled.

In points of error twenty-five through thirty, the appellant argues that the mitigation special issue is unconstitutional because it did not provide a means for jurors to give effect to the mitigating circumstances warranting a life sentence, shifted the burden of proof to the appellant to prove that sufficient mitigating circumstances existed to warrant a life sentence, and did not require jurors to consider mitigating circumstances alone in determining whether a life sentence was warranted. This Court has previously considered and rejected these and similar claims.[59] The appellant has provided the Court no reason to reconsider our prior decisions. Points of error twenty-five through thirty are overruled.

In points of error thirty-one and thirty-two, the appellant argues that the Texas death penalty scheme is unconstitutional because it limits jurors to consideration of "relevant" mitigating circumstances, thereby constricting the jury's consideration of mitigation that might warrant a life sentence. The jury was instructed in several places in the charge regarding the evidence it should consider. The jury was told, "It is necessary, now, for you to determine from all the evidence in the case, answers to certain questions called 'Special Issues' in this charge." The court's charge to the jury went on to state that "[i]n determining

---

[58] *See Perry v. State*, 158 S.W.3d 438, 446-48 (Tex. Crim. App. 2004); *Blue*, 125 S.W.3d at 500-01.

[59] *McFarland v. State*, 928 S.W.2d 482 (Tex. Crim. App. 1996); *Morris v. State*, 940 S.W.2d 610, 614-15 (1996); *Lawton v. State*, 913 S.W.2d 542, 555-56 (Tex. Crim. App. 1995); *Barnes v. State*, 876 S.W.2d 316, 330 (1994).

your answers to the questions, or special issues, submitted to you, you shall consider all the evidence submitted to you in this whole trial. You shall consider all evidence submitted to you . . .."

The jury was further instructed that it should consider "all relevant mitigating circumstances, if any, supported by the evidence" from the trial. Finally, the jury was asked whether "[t]aking into consideration all of the evidence . . . do you find that there is a sufficient mitigating circumstance" warranting a life sentence be imposed rather than a sentence of death. An instruction that prohibits a jury from basing its sentencing decision on factors that are irrelevant to the issues at trial is not unconstitutional.[60] Points of error thirty-one and thirty-two are overruled.

In points of error thirty-five through thirty-seven, the appellant contends that the Texas death penalty scheme is unconstitutional for failing to provide a mechanism for meaningful appellate review of the jury's decision regarding mitigating circumstances. This claim has been previously rejected by this Court.[61] Points of error thirty-five, thirty-six, and thirty-seven are overruled.

In points of error thirty-three and thirty-four, the appellant complains that the jury charge instructed jurors to consider all evidence pertaining to the appellant's background, character, or circumstances of the offense that "militates for or mitigates against the

---

[60] *California v. Brown*, 479 U.S. 538, 543 (1987).

[61] *See Prystash v. State*, 3 S.W.3d 522, 536 (Tex. Crim. App. 1999).

imposition of the death penalty." The appellant challenges the use of the word "militates" in the jury instruction. The charge given by the trial court tracks the statutory language of Article 37.071. This Court has previously stated that "[w]ords which are not statutorily defined are to be given their usual meanings and no specific instructions are required."[62] "'Militate' is such a word that can be given its ordinary meaning."[63] Points of error thirty-three and thirty-four are overruled.

In points of error thirty-seven and thirty-eight, the appellant alleges that the jury instructions unconstitutionally instructed jurors that ten must agree to vote "no" on one of the first two special issues, when in fact only a single "no" vote was required for the appellant to receive a life sentence. Additionally, in point of error thirty-nine, the appellant complains that the trial court violated the Sixth Amendment by failing to instruct the jury that a "no" vote by a single juror would result in a life sentence rather than the death penalty. This Court has already rejected these and similar arguments.[64] Points of error thirty-seven and thirty-eight are overruled.

We affirm the judgment of the trial court.

Delivered: April 30, 2008
Publish.

---

[62] *Martinez v. State*, 924 S.W.2d 693, 698 (Tex. Crim. App. 1996); *Garcia v. State*, 887 S.W.2d 846, 859 (Tex. Crim. App. 1994).

[63] *Id*.

[64] *See Feldman v. State*, 71 S.W.3d 738, 757 (Tex. Crim. App. 2002); *Lawton*, 913 S.W.2d at 555-56.