In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00154-CR


______________________________




ARTIS JAMES GRAY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


 Gregg County, Texas


Trial Court No. 35664-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Artis James Gray, described as being "slow" and "kind of hard to pick up on stuff," admits
to having had sex with his thirteen-year-old cousin, who is also considered "slow." Gray pled guilty
to two counts of aggravated sexual assault of a child (1) but, in two points of error on appeal, complains
of the trial court's failure to sua sponte conduct an informal inquiry into Gray's competency at the
time it accepted his guilty plea and at the time of Gray's punishment hearing. Because we hold that
the trial court made sufficient inquiry, we affirm the judgment of the trial court.

(1) Competency Generally and Informal Inquiry into Competency

 We review for an abuse of discretion the totality of the facts surrounding a trial court's
implied decision not to hold a competency inquiry. Moore v. State, 999 S.W.2d 385, 393 (Tex.
Crim. App. 1999); Bigby v. State, 892 S.W.2d 864, 885 (Tex. Crim. App. 1994). A person is
incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with
the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as
factual understanding of the proceedings against the person. Tex. Code Crim. Proc. Ann. art.
46B.003(a) (Vernon 2006); Fuller v. State, No. AP-74,980, 2008 Tex. Crim. App. LEXIS 567, at
*12 (Tex. Crim. App. Apr. 30, 2008); Eddie v. State, 100 S.W.3d 437, 443 (Tex. App.--Texarkana
2003, pet. ref'd). A defendant is presumed competent to stand trial and shall be found competent to
stand trial unless proved incompetent by a preponderance of the evidence. Tex. Code Crim. Proc.
Ann. art. 46B.003(b) (Vernon 2006).

 If evidence suggesting the defendant may be incompetent to stand trial comes to the attention
of the trial court, the court on its own motion shall suggest that the defendant may be incompetent
to stand trial. Tex. Code Crim. Proc. Ann. art. 46B.004(b) (Vernon 2006). On suggestion that the
defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether
there is some evidence from any source that would support a finding that the defendant may be
incompetent to stand trial. Tex. Code Crim. Proc. Ann. art. 46B.004(c) (Vernon 2006). If, after
an informal inquiry, the trial court determines that evidence exists to support a finding of
incompetency, the trial court shall order an examination to determine whether the defendant is
incompetent to stand trial in a criminal case. Tex. Code Crim. Proc. Ann. art. 46B.005(a) (Vernon
2006); Salahud-din v. State, 206 S.W.3d 203, 208 (Tex. App.--Corpus Christi 2006, pet. ref'd).

(2) The Trial Court Made a Sufficient Inquiry Before Accepting Gray's Guilty Plea

 The Texas Code of Criminal Procedure prohibits a trial court from accepting a guilty plea
"unless it appears that the defendant is mentally competent. . . ." Tex. Code Crim. Proc. Ann. art.
26.13(b) (Vernon Supp. 2007). Under Article 26.13, unless an issue is made of an accused's present
insanity or mental competency at the time of the plea, the trial court need not make inquiry or hear
evidence on such issue. See Kuyava v. State, 538 S.W.2d 627, 628 (Tex. Crim. App. 1976); Ring
v. State, 450 S.W.2d 85, 88 (Tex. Crim. App. 1970); Godoy v. State, 122 S.W.3d 315, 320 (Tex.
App.--Houston [1st Dist.] 2003, pet. ref'd). And this is true especially where the trial court has had
opportunity to observe the accused in open court, to hear him or her speak, to observe his or her
demeanor, and to engage him or her in colloquy as to the voluntariness of the plea. Kuyava, 538
S.W.2d at 628; Summerall v. State, 514 S.W.2d 265 (Tex. Crim. App. 1974). The better practice,
however, is for the trial court to inquire into the mental competency of the defendant whether the
issue is raised or not. Kuyava, 538 S.W.2d at 628.

 Here, we need not determine whether the mental competency issue was sufficiently raised
to require the trial court to inquire into Gray's competency, because the record reflects that the trial
court did make that inquiry. Note the following exchanges occurring before the court accepted
Gray's open plea of guilty:

 COURT: Before signing any of these papers, did you sit down with your attorney,
Mr. Clement Dunn; and did he go over all these papers with you?


 GRAY: Yes, sir.


 COURT: Did you understand them when you signed them?


 GRAY: Yes, sir. 

 . . . . 

 COURT: In your words, just tell me what you're doing in court here today.


 GRAY: I'm pleading guilty to the offense.


 COURT: And what offense is that?


 GRAY: Sexual assault.


 COURT: All right. It's aggravated sexual assault.


 GRAY: Aggravated sexual assault. 

 . . . . 

 COURT: Mr. Dunn, talk to me about your judgment as to your client's mental
competency.


 [DEFENSE COUNSEL]: Your Honor, I've spoken with my client a number of times. 
I have spoken with his mother on a number of occasions.

 

 COURT: Is she present in the courtroom?

 

 [DEFENSE COUNSEL]: Yes, she is. She is towards the back.


 COURT: All right.


 [DEFENSE COUNSEL]: I know that the presentence report indicates that my client
has been in special ed classes, that he receives disability payments due to a "mental
deficiency" as labeled for these purposes. While acknowledging that background, I
have found him to be able to understand me. And we have been able to converse
such that I'm satisfied that he understands what he is doing. 

From these excerpts in particular, it appears that Gray directly answered the court's questions in a
way that showed he understood both the proceedings against him and the consequences of his guilty
plea and that he was able to effectively communicate with his attorney. His attorney's response to
the trial court's inquiry confirmed that, even though Gray had a history of taking special education
classes, Gray was able to understand the proceedings against him. After these exchanges, during
which the trial court had the opportunity to communicate with Gray and observe his behavior, it
expressly found as follows: "I'm going to receive your guilty plea. I'm going to find that you make
it freely and voluntarily, that you are mentally competent." 

 The record reveals no evidence to rebut the presumption of competence such that the trial
court would have been required to make further inquiry into Gray's competence. Having satisfied
itself by its informal inquiry that Gray was competent, the trial court properly accepted Gray's guilty
plea without inquiring further into competency. We overrule Gray's first point of error.

(3) Failing to Inquire Further into Competency at the Punishment Hearing Was Not an Abuse
of Discretion; The Court's Inquiry Was Sufficient


 A defendant must also be mentally competent to be sentenced. See Casey v. State, 924
S.W.2d 946, 949 (Tex. Crim. App. 1996). To prompt the trial court's informal inquiry concerning
the defendant's competency, the evidence must raise a "bona fide doubt" in the mind of the trial
judge to the defendant's competency to stand trial. See Alcott v. State, 51 S.W.3d 596, 601 (Tex.
Crim. App. 2001); Collier v. State, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997); Salahud-din, 206
S.W.3d at 208. A bona fide doubt is "a real doubt in the judge's mind as to the defendant's
competency." Fuller, 2008 Tex. Crim. App. LEXIS 567, at *12 (quoting Alcott, 51 S.W.3d at 599
n.10). Evidence raising a bona fide doubt "need not be sufficient to support a finding of
incompetence and is qualitatively different from such evidence." Fuller, 2008 Tex. Crim. App.
LEXIS 567, at *12; Alcott, 51 S.W.3d at 599 n.10. Evidence is sufficient to create a bona fide doubt
if it indicates "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the
defendant." Fuller, 2008 Tex. Crim. App. LEXIS 567, at *12; McDaniel v. State, 98 S.W.3d 704,
710 (Tex. Crim. App. 2003); Collier, 959 S.W.2d at 625. If any evidence that suggests the defendant
may be incompetent to stand trial comes to the trial court's attention, the trial court shall sua sponte
"suggest that the defendant may be incompetent to stand trial" and then "determine by informal
inquiry whether there is some evidence from any source that would support a finding that the
defendant may be incompetent to stand trial." Tex. Code Crim. Proc. Ann. art. 46B.004 (Vernon
2006). The question, then, before us is whether the trial court abused its discretion when, in light
of the evidence presented at punishment, it did not conduct a further competency inquiry at that time.

 We address Gray's contention by first noting that, moments before the punishment phase
began, the trial court asked both Gray and defense counsel about Gray's understanding of the
proceedings. We believe that was sufficient. In a similar case decided by the Fort Worth Court of
Appeals, the court ruled that Chapter 46B was satisfied with the trial court's informal inquiry
establishing that the defendant did not suffer from recent severe mental illness or moderate
retardation, that he understood the charges that he was facing, that he had been able to communicate
in a meaningful way with his attorneys, that an ex parte evaluation had found him competent to stand
trial, and that his own counsel had no question about his competence to stand trial. See Lawrence
v.  State,  169  S.W.3d  319,  325  (Tex.  App.--Fort  Worth  2005,  pet.  ref'd);  see  also  Hill  v.
State, No. 2-06-094-CR, 2007 Tex. App. LEXIS 2272 (Tex. App.--Fort Worth Mar. 22, 2007, pet.
ref'd) (mem. op., not designated for publication); Johnson v. State, Nos. 05-05-00464-CR, 05-05-00465-CR, 05-05-00466-CR, 05-05-00467-CR, 2006 Tex. App. LEXIS 3062 (Tex. App.--Dallas
Apr. 18, 2006, no pet.) (mem. op., not designated for publication). Here, aside from an ex parte
evaluation (the importance of which seems minimal), we find the trial court's inquiry quite similar
to that in Lawrence. We think the previously quoted exchanges between the trial court and both
Gray and defense counsel are sufficient to constitute an informal inquiry into Gray's competence.

 Gray's contention could be read to advance the position that the evidence presented at
punishment was sufficient to prompt the trial court to inquire into Gray's competency further during
the punishment hearing. At the punishment hearing, Gray's mother testified that Gray, eighteen years
old at the time of trial, was born prematurely. As a result, "he's slow" and "he is kind of hard to pick
up on stuff." She explained that he underwent regular doctor visits to qualify for SSI benefits which
he has received since the age of four. When asked the reason he received such benefits, she
reiterated that Gray "is slow and hard to pick up stuff and had trouble in school and stuff." She
described the trouble Gray had in school: "Well, he wouldn't sit down in the class, and he was slow
picking up stuff. They put him in special ed. It was the same thing, so." She went on to explain that
Gray continued to do poorly in the special education program and had to repeat a grade. His mother
testified that Gray also had a hard time keeping a job since dropping out of school, stating that he
has worked only about two days. His employers would let him go because he "was hard to pick up
on whatever they were doing." 

 Gray, according to his mother, has trouble performing simple, everyday tasks. She and Gray
both insist that Gray had consensual sex with his thirteen-year-old cousin, who is also considered
"slow," but that he did not forcibly rape her. She had become aware about a year and a half earlier
about the first time Gray had had sex with his young cousin. On learning of the incident, Gray's
mother physically punished him and directed him not to engage in such inappropriate behavior. 

 Gray testified that his cousin expressed her desire to have sex with him. Gray recalled clearly
the occasions on which he had sex with the girl and all the details concerning time and location. He
readily admitted having sex with the girl, but explained that she wanted to do so. When asked, he
described his cousin as "sometimes slow" but believed that she knew what she was talking about. 
Gray confirmed that he did attend some special education classes. 

 On cross-examination, the following exchange took place demonstrating Gray's generally
lucid and precise responses to questioning:

 [THE STATE]: Mr. Gray, you said in your PSI, "I didn't think I forced her or
nothing"; is that correct?


 GRAY: I didn't say that.


 [THE STATE]: You didn't say to the presentence investigation officer that, "I didn't
think I forced her or nothing"?


 GRAY: I said, "I didn't force her." I didn't say, "I didn't think."

When confronted with the accusation that he forced his cousin to have sex with him, Gray responded
that he "wouldn't do that to my cousin," that he "wouldn't do that to nobody." 

 Essentially, the evidence to which Gray points as raising a bona fide doubt as to his
competency is the evidence of his below-average intelligence and the fact that he receives Social
Security checks based on "mental disability." The Texas Court of Criminal Appeals has concluded
that evidence of moderate or greater retardation is sufficient to create a question of competency. See
McDaniel, 98 S.W.3d at 710. It has not gone further to conclude that evidence suggesting that a
defendant has below-average intelligence and, arguably, may be mentally retarded is, alone,
sufficient to suggest that the defendant is incompetent. Nor have any of our sister courts. See
Arguelles v. State, No. 13-06-00184-CR, 2007 Tex. App. LEXIS 7911 (Tex. App.--Corpus Christi
Oct. 4, 2007, no pet.) (mem. op., not designated for publication) (concluding the following evidence
was insufficient to raise a bona fide doubt that defendant was competent: (1) defendant received
Social Security benefits, (2) defendant had been placed in special education classes, (3) defendant
suffered from depression, (4) defendant took prescription medication, and (5) defendant was unable
to read).

 Given the thorough informal inquiry made by the trial court at the time it took Gray's plea,
the evidence presented during the punishment hearing was not of such character or quantity to
require the trial court to further inquire into Gray's ability to consult with counsel or understand the
proceedings against him. We conclude that the trial court did not abuse its discretion by failing to
conduct further inquiry into Gray's competency after hearing the evidence presented during the
punishment hearing. The trial court inquired informally shortly before the punishment hearing
began, and the evidence presented at punishment did not prompt further inquiry into the matter. We
overrule Gray's second point of error.



 We affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: May 5, 2008

Date Decided: July 2, 2008


Publish




1. The trial court imposed punishment of twenty years for each offense, to run concurrently.


:variable;
 mso-font-signature:-1610611985 1073750139 0 0 159 0;}
@font-face
 {font-family:Tahoma;
 panose-1:2 11 6 4 3 5 4 4 2 4;
 mso-font-charset:0;
 mso-generic-font-family:swiss;
 mso-font-format:other;
 mso-font-pitch:variable;
 mso-font-signature:3 0 0 0 1 0;}
 /* Style Definitions */
 p.MsoNormal, li.MsoNormal, div.MsoNormal
 {mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-002-CV%20In%20the%20Interest%20of%20S.A.C.\,%20a%20Child%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00002-CV

                                                ______________________________

 

 

 

IN THE INTEREST OF S.A.C.,
A CHILD

 

                                                                  

 

                                                                                                  


 

 

                                       On Appeal from the 307th
Judicial District Court

                                                             Gregg County, Texas

                                                     Trial Court No. 2008-2517-DR

 

                                                   
                                               

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








            MEMORANDUM OPINION

 

            Carmelo Cervantes has filed an appeal from the
termination of his parental rights to S.A.C., an infant now approximately
fourteen months of age.  Counsel timely
filed the mandated issues to be raised on appeal and a motion for new trial.  At a brief hearing, the trial court denied
the motion, declared the appeal was frivolous under Section 263.405 of the
Texas Family Code, and found Cervantes not
indigent (and thus not entitled to a free record).  The trial court, however, continued
Cervantes appointed trial counsel as appointed counsel on appeal.  

            In our order
of January 29, 2010, we declined to immediately rule on the motion to dismiss
because the record of the hearing on new trial provided no information which
could show this Court whether the frivolousness determination was proper.  We, therefore, provided time and opportunity
for Cervantes to try to get a reporters record or for counsel to file a brief
containing whatever issues might be viable based on the appellate record as it
presently exists before this Court.  Any
such action was to be taken, and this Court informed of it, before March 1,
2010.  We warned at that time that
failure to proceed with the appeal could cause the case to be dismissed.

            We have
again contacted counsel by telephone. 
Counsel has advised that no record will be forthcoming and that no brief
will be filed.

            It remains
the duty of a nonindigent litigant to request and pay for whatever record he or
she may need to pursue an appeal.  See Tex.
R. App. P. 34.6, 35.3(b).  That
has not occurred here.  When no
reporters record is filed due to an appellants fault, we may consider issues
or points that do not require a reporters record for decision.  Tex.
R. App. P. 37.3(c).  

            Here,
however, no such issues or points have been presented to this Court, and
counsel has concluded that filing a brief would be futile.  Here, in the absence of a reporters record,
no reversible error can be shown.  As
this is a civil case, we are authorized to dismiss the appeal for want of
prosecution in the absence of a brief.  Tex. R. App. P. 38.8(a)(1).

            We further
note that, although the filing of Anders
briefs has been a procedure followed in a number of cases,[1]
neither the Texas Supreme Court nor the United States Supreme Court has held
that counsel is required to file an Anders
brief[2]
in a parental-rights termination case on finding that no arguable error exists
or that the appellate courts are obliged to review the record for arguable
error.  L.D.T., 161 S.W.3d at 730.

            We also
recognize that, under these circumstances, the appellant has acquiesced in a
situation that prevents this Court from reviewing most issues on their merits,
and also prevents us from reviewing the trial courts determination that this
appeal is frivolous.

 

 

 

 

 

 

 

 

 

            We
dismiss the appeal for want of prosecution.

 

 

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          March
11, 2010

Date Decided:             March
12, 2010

 

 











[1]See In re L.D.T., 161 S.W.3d 728, 73031
(Tex. App.Beaumont 2005, no pet.); In re
D.E.S., 135 S.W.3d 326, 329 (Tex. App.Houston [14th Dist.] 2004, no pet.);
In re K.D., 127 S.W.3d 66, 67 (Tex.
App.Houston [1st Dist.] 2003, no pet.); Porter
v. Tex. Dept of Protective & Regulatory Servs., 105 S.W.3d 52, 56
(Tex. App.Corpus Christi 2003, no pet.); In
re K.M., 98 S.W.3d 774, 777 (Tex. App.Fort Worth 2003, no pet.); In re E.L.Y., 69 S.W.3d 838, 841 (Tex.
App.Waco 2002, no pet.); In re K.S.M.,
61 S.W.3d 632, 634 (Tex. App.Tyler 2001, no pet.).

 





[2]Anders v. California, 386 U.S. 738
(1967).