**Opinion issued February 7, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

NO. 01-10-00881-CR

NO. 01-10-00882-CR

_____

**KOREY ADELEYE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1212111 & 1212112**

## MEMORANDUM OPINION

Appellant Korey Adeleye pleaded guilty to two separate offenses of aggravated robbery without an agreed punishment recommendation.[1]  With respect to each offense, the trial court deferred adjudication of appellant's guilt and placed him on community supervision for 10 years.  Based on the State's later-filed motions to adjudicate, the trial court revoked appellant's community supervision, found appellant guilty, and sentenced him to 20 years in state prison in each case. The trial court granted appellant's motion for new trial regarding punishment only. Following the new punishment trial, the trial court again sentenced appellant to 20 years in prison in each case with the sentences to run concurrently.  Raising the same two issues in each appeal, appellant contends that (1) he received ineffective assistance of counsel at the adjudication hearing, and (2) the trial court erred because it did not conduct an inquiry into appellant's competency.

We affirm the judgment in each appellate cause.

## Background

In late 2008 and early 2009, appellant participated in the commission of five aggravated robberies in Harris County and one aggravated robbery in Brazoria County.  With regard to each offense, appellant and his associates robbed store employees at gunpoint.  Appellant was 15 years old at the time.  He later admitted

---

[1]     *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2011).

2

to police that he committed the robberies as a member of a gang, the 52 Hoover Crips. In two of the robberies, appellant had been the person wielding the gun.

The Harris County juvenile court ordered a full investigation of the offenses and appellant's circumstances, along with a diagnostic study and social evaluation of appellant. After receiving the results of the investigation and conducting a hearing, the juvenile court found appellant had "sufficient sophistication and maturity" to have aided in his defense and to be responsible for his conduct. The juvenile court waived jurisdiction and certified appellant to stand trial as an adult.

Appellant waived indictment, and the State charged appellant in separate informations with the offense of aggravated robbery with respect to the Harris County offenses. The State dropped three of the aggravated robbery charges against appellant. Without an agreed punishment recommendation, appellant pleaded guilty to the two remaining charges of aggravated robbery. Following the preparation of a presentence investigation report, the trial court placed appellant on deferred adjudication community supervision for 10 years in each case.

Four months later, the State filed a motion to adjudicate appellant's guilt in each case. The State alleged that appellant had violated 10 separate conditions of his community supervision. The State asserted that those violations included appellant's commission of a new criminal offense and appellant's communicating with gang members.

The trial court held a hearing on the State's motions. At the end of the hearing, the trial court found that appellant had violated the terms and conditions of his community supervision by committing the offense of terroristic threat and by communicating with gang members. The trial court adjudicated appellant's guilt. Without conducting a punishment hearing, the trial court immediately sentenced appellant to 20 years in prison in each case with the sentences to run concurrently.

In the juvenile court proceedings and at the adjudication hearing, appellant had been represented by Kathleen Robbins. Following the adjudication hearing, appellant obtained new counsel. New counsel filed a motion for new trial in which they asserted that appellant was entitled to a new punishment hearing because he had not received a separate punishment hearing following the adjudication hearing. New counsel also asserted that appellant's previous attorney had rendered ineffective assistance of counsel at the adjudication hearing. The motion alleged that Robbins had failed to call available witnesses to testify at the adjudication hearing, whose testimony would have been helpful to him. Appellant also asserted "no investigation was done by counsel of record into mitigation evidence that would have been favorable to the defense and no objection was made by counsel as to the complete lack of a punishment hearing."

The trial court signed an order granting appellant's motion for new trial with respect to a new punishment hearing. In the order, the trial court made a finding

4

that appellant had received effective assistance of counsel at the adjudication hearing but was entitled to a new punishment hearing.

Appellant's counsel then filed an ex parte motion for appointment of a mental health and retardation expert to review appellant's records and interview him before the new punishment hearing. Counsel stated that they had "discovered that there was a complete psychological and social history done on [appellant] in his case in Brazoria County during his adult certification proceedings." Counsel stated they saw documents, including recent IQ tests that indicated that appellant has an overall functional score of approximately 61 IQ, "placing him in the mildly retarded range." Counsel averred that appellant's "mental acuity, intelligence and overall psychological history will be at issue" at the punishment hearing. Counsel also filed, under seal, a copy of the evaluations and IQ testing that had been ordered in the juvenile court proceedings.

The trial court granted appellant's motion for psychological testing. With the funds obtained for a court-appointed expert, appellant retained Dr. Steven Rubenzer to evaluate appellant. The trial court also granted appellant a continuance of the punishment hearing to permit the doctor to evaluate appellant. When the punishment hearing began on September 17, 2010, appellant's counsel orally moved for a continuance stating that Dr. Rubenzer had not been able to evaluate appellant. Counsel explained that appellant had been in jail in Brazoria

5

County and that there had been logistical problems transferring appellant to Harris County. These logistical issues had prevented Dr. Rubenzer from meeting with appellant.

The trial court noted that it had granted an earlier continuance to facilitate the psychological evaluation. The court also stated that, for purposes of assessing appellant's punishment, in addition to newly introduced evidence, it would consider evidence previously admitted in the proceedings, including the presentence investigation (PSI) report and testimony introduced at the adjudication hearing. The trial court noted that a psychological evaluation had previously been completed on appellant, and that such evaluation was discussed in the PSI report.

The trial court also noted that, because it was in trial in another case, it would not complete the punishment hearing that day. It stated that the punishment hearing would resume the next week on September 21, 2010. The court told appellant's counsel that this would allow Dr. Rubenzer time to evaluate appellant.

As his first witness, appellant called Dr. Rubenzer to testify in support of appellant's motion for continuance of the hearing. Although he had not had the opportunity to examine appellant, the doctor testified that he had reviewed two prior evaluations of appellant and some of appellant's school records. When asked whether the recent testing had indicated appellant's IQ was 62, Dr. Rubenzer testified, "Well, it reported that number, but [the report] also cautioned that that

6

number might be an underestimate of his abilities based on his presentation during the evaluation." Later in his testimony, Dr. Rubenzer again acknowledged that appellant's IQ was previously determined to be 62, but noted that the report indicated it might not be an accurate estimate because during the evaluation, appellant had been unfocused, distracted and "perhaps not trying his best."

Dr. Rubenzer also testified that he had reviewed an evaluation in which appellant's IQ had been determined to be 78. The doctor stated that this IQ level did not qualify as mentally retarded but was "borderline." At the end of the hearing, the trial court stated that the hearing would be adjourned for four days and told appellant's counsel "perhaps that will give Dr. Rubenzer time to interview your client."

When the hearing resumed, appellant's counsel told the trial court that Dr. Rubenzer had attempted to interview appellant but had been prevented from doing so by jail personnel. The trial court stated that the punishment hearing would not be concluded that day and would continue the following day. The court made arrangements for Dr. Rubenzer to meet with appellant after the hearing adjourned. However, when the hearing resumed the next day, no mention was made of Dr. Rubenzer. The defense called two witnesses to testify that day, neither of which were Dr. Rubenzer. The defense did not ask for another continuance.

During the three-day punishment hearing, appellant called six witnesses to testify who were his friends and family. The testimony of these witnesses, along with the PSI report, showed that appellant had learning and academic difficulties, which had become apparent when appellant was in the third grade. Appellant had been placed in mainstreamed special education classes. Appellant's relatives testified that his grades varied at school over the years. A number of the witnesses indicated that, with support, appellant could succeed at school. The evidence also showed that appellant had been diagnosed with attention deficit hyperactivity disorder (ADHD). Appellant's ADHD affected his ability to focus on tasks and resulted in poor impulse control.

Appellant's mother testified that school became more difficult for appellant when he entered high school. When he became depressed over his difficulty with school, his mother had appellant admitted to a mental health facility for approximately a week in December 2008. At the time, appellant's mother feared that appellant might attempt suicide. Appellant was diagnosed with depression.

The evidence also showed that appellant had suffered a head injury at some point before he committed the robbery offenses. After that, appellant experienced headaches.

At the conclusion of the new punishment hearing, the trial court again sentenced appellant to 20 years in prison for each offense. These appeals followed.

8

Appellant raises two identical issues in each appeal. He contends (1) he received ineffective assistance of counsel at the adjudication hearing and (2) the trial court erred because it did not conduct an inquiry into appellant's competency at the second punishment hearing.

## Ineffective Assistance of Counsel

In his first issue, appellant contends that he received ineffective assistance of counsel at the adjudication hearing. He contends that his attorney should have presented evidence of appellant's 62 IQ showing that he was "mildly retarded" and other evidence of his mental deficiencies.

### A.     Applicable Legal Principles

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068, (1984); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Andrews*, 159 S.W.3d at 101.

9

Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id*. There is a presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and counsel's performance will be found deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 101.

The Court of Criminal Appeals has stated that "[i]n making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). The court further stated that demonstrating ineffective assistance of counsel on direct appeal is "a difficult hurdle to overcome." *Id*. The court instructed, "[T]he record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id*.

B. **Analysis**

Appellant asserts that counsel's performance at the adjudication hearing was deficient because counsel did not introduce evidence of his low IQ. Appellant

points to two reports containing the findings of psychological evaluations he underwent as part of the juvenile court certification process.[2] He asserts that counsel should have introduced these reports and other evidence indicating his mental deficiencies.

Appellant filed a motion for new trial following the adjudication hearing alleging that counsel was deficient because she failed to call certain witnesses to testify for him. He also asserted that he was entitled to a new sentencing hearing because he did receive a separate punishment hearing. In its order, the trial court rejected appellant's assertion of ineffective assistance of counsel but granted appellant a new punishment trial because he had not had a separate sentencing hearing.

Appellant did not file a motion for new trial following the new hearing on punishment. This is significant. With the motion, counsel was not permitted to testify regarding her trial strategy regarding her decision to present, or not to present, certain evidence. Absent her testimony, we are left to speculate what counsel's trial strategy was regarding the complaint appellant raises against her. We cannot meaningfully address her strategic reasons for the omission of certain evidence that appellant now alleges constitutes ineffective assistance of counsel.

---

[2] Appellant attaches these reports to his brief, but he does not point to where they appear in the record. We cannot consider on appeal items that were not admitted into evidence. *See Webber v. State*, 21 S.W.3d 726, 731 (Tex. App.—Austin 2000, pet. ref'd).

*See Crawford v. State*, 355 S.W.3d 193, 199 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Davis v. State*, 930 S.W.2d 765, 769 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)).  In short, we do not know why defense counsel did not introduce the evidence cited by appellant.  Given the silent record, we presume that counsel had a tactical reason for omitting the evidence.  *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate. . . .").  We further presume that trial counsel's actions and decisions were reasonable and motivated by sound trial strategy.  *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  Appellant has not met his burden to satisfy the first *Strickland* component by demonstrating that his counsel's performance at the adjudication hearing fell below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *Andrews*, 159 S.W.3d at 101–02.

Appellant also has not satisfied the second *Strickland* component.  More precisely, appellant has not shown that there is a reasonable probability that the result of the proceedings would have been different had counsel introduced evidence of his mental deficiencies at the adjudication hearing.

Appellant makes no substantive argument that the omitted evidence would have been relevant to appellant's defense against the State's motion to revoke community supervision. Appellant does, however, assert that the omitted evidence would have served to mitigate his punishment. In making this argument, appellant fails to recognize that he received a new punishment hearing at which evidence of appellant's mental deficiencies was introduced. Even though such evidence was introduced, appellant again received a 20 year prison sentence for each offense.

We conclude appellant has not shown that there is a reasonable probability that, but for his counsel's alleged deficient performance, the outcome of the proceeding would have been different. *See Andrews*, 159 S.W.3d at 102. The failure to make a showing under either of the required prongs of *Strickland* defeats a claim for ineffective assistance of counsel. *Williams*, 301 S.W.3d at 687. We hold that appellant has failed to show, by a preponderance of the evidence, that he received ineffective assistance of counsel at trial. *See Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068. Accordingly, we overrule appellant's first issue in each appeal.

## Competency

In his second issue, appellant contends that the trial court erred "in failing to conduct an inquiry and hearing regarding his competency" during the new hearing

on appellant's punishment.  Appellant contends that the trial court's failure to inquire into his competency deprived him of due process.

## A.    Standard of Review and Applicable Legal Principles

We review a complaint that a trial court erred because it did not conduct an informal competency inquiry for an abuse of discretion.  *See Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009).  A trial court's assessment of a defendant's mental competency is entitled to great deference by a reviewing court.  *McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003).  We will not substitute our judgment for that of the trial court; rather, we will determine whether the trial court's decision is arbitrary or unreasonable.  *See Montoya*, 291 S.W.3d at 426 (noting that trial court is "in a better position to determine whether [the defendant] was presently competent").

At the time of appellant's punishment hearing, the law provided that the trial court's duty to conduct an informal inquiry into the defendant's competency was triggered when some evidence raises a "bona fide doubt" that (1) the defendant lacks a rational and factual understanding of the proceedings against him or (2) he does not have the ability to consult his attorney with a reasonable degree of rational understanding.[3]  *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)

---

[3]    The Texas Legislature amended article 46B.004, effective September 1, 2011, to add subsection c–1, which provides, in relevant part, that "the court is not required to have a bona fide doubt about the competency of the defendant."  *See* Act of May 24,

14

(Vernon 2006), *id.* art. 46B.004(c) (Vernon Supp. 2012); *Montoya*, 291 S.W.3d at 425. A bona fide doubt may exist if the defendant exhibits truly bizarre behavior, has a recent history of severe mental illness, or has at least moderate mental retardation. *See Montoya*, 291 S.W.3d at 425. Evidence sufficient to create a bona fide doubt about the defendant's competency may come from the trial court's own observations, known facts, evidence presented, motions, affidavits, or any other reasonable or credible sources. *Brown v. State*, 129 S.W.3d 762, 765 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The evidence need not be sufficient to find an accused actually incompetent; rather, it must create "a real doubt in the judge's mind as to the defendant's competency." *See Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). If evidence warrants a competency hearing, and the trial court denies such a hearing, the defendant is deprived of his constitutional right to a fair trial.[4] *See Pate v. Robinson*, 383 U.S. 375, 385, 86 S. Ct. 836, 842 (1966).

---

2011, 82nd Leg. R.S., ch. 822, §§ 21(a), 22, 2011 Tex. Sess. Law Serv. 1893, 1899–1900 (codified at TEX. CODE CRIM. PROC. ANN. art. 46B.004(c–1) (Vernon Supp. 2012)). We do not determine the effect of subsection c–1 to these cases because the subsection was not in effect at the time of appellant's second punishment hearing and appellant does not argue the amendment applies.

[4] It is unclear whether appellant is challenging the trial court's failure to conduct a competency inquiry or a competency hearing. Nonetheless, to the extent that appellant argues separately that the court should have conducted either an inquiry or a hearing, the ultimate issue is the same—was the evidence sufficient to raise a bona fide doubt in the trial court's mind about appellant's competency to stand trial? *See Iniquez v. State*, 374 S.W.3d 611, 615–16 (Tex. App.—Austin 2012, no pet.) (citing *Montoya v. State*, 291 S.W.3d 420, 424–25 (Tex. Crim. App. 2009)).

**B.  Analysis**

Appellant contends the trial court should have inquired into his competency and held a subsequent competency hearing based on the evidence presented at the new punishment trial.  Appellant first points out that he was only 15 years old at the time he committed the robberies.  Although he was 15 years old at the time he committed the aggravated robberies, appellant was 17 years old at the time of the new punishment hearing.  In addition, as mentioned, the record reflects that the juvenile court ordered a full investigation of the offenses and appellant's circumstances along with a diagnostic study and social evaluation of appellant.  After receiving the results of the investigation and conducting a hearing, the juvenile court found appellant had "sufficient sophistication and maturity" to have aided in his defense and to be responsible for his conduct.  Nothing in the record indicates that appellant's youth prevented him from understanding the proceedings or consulting with his attorney at the second punishment hearing.

Appellant next points to evidence indicating he has an IQ of 62.  Appellant's 62 IQ is characterized in the record as indicating mild mental retardation.  Thus, it is not evidence of "recent, severe mental illness, at least moderate mental retardation, or truly bizarre acts by [appellant]."  *See Fuller*, 253 S.W.3d at 228 (quoting *McDaniel*, 98 S.W.3d at 710).  In other words, the evidence of appellant's 62 IQ score did not demonstrate at least moderate retardation.  *See White v. State*,

16

Nos. 05–11–00984–CR, 05–11–00985–CR, 05–11–00986–CR, 2012 WL 3104787, at *3 (Tex. App.—Dallas July 31, 2012, no pet.) (not designated for publication) (citing *Ex parte Rodriguez*, 164 S.W.3d 400, 402 (Tex. Crim. App. 2005)).

Moreover, appellant's own expert witness, Dr. Rubenzer, explained at the second punishment hearing that the evaluation report showing the 62 IQ also indicated that the "number might be an underestimate of his abilities based on his presentation during the evaluation." Dr. Rubenzer noted that the report indicated the 62 IQ might not be an accurate estimate because during the evaluation, appellant had been unfocused, distracted, and "perhaps not trying his best." The record also shows that appellant's IQ in another evaluation had been determined to be 78, which as Dr. Rubenzer testified, did not qualify as appellant being mentally retarded but as being "border line."

Appellant also cites evidence showing that he had "learning deficiencies" that caused him to struggle academically and led him to be placed in special education classes. Placing the evidence in context, the record also reflects that appellant was mainstreamed into regular classes and could perform satisfactorily when given academic assistance and support. The record shows that, while he did not pass some classes, he was successful in others. In any event, evidence of appellant's academic challenges did not tend to show incompetency because there was no evidence that his "learning deficiencies" affected appellant's present ability

17

at the new punishment hearing to understand the proceedings and to consult with his attorney. *See Moore v. State*, 999 S.W.2d 385, 395–96 (Tex. Crim. App.1999) discussing distinction between evidence of impairment and evidence of incompetency); *see also Montoya*, 291 S.W.3d at 425–26.

Appellant points to evidence showing he suffered a head injury before he committed the offenses nearly two years earlier. While evidence indicated he had headaches after the head injury, there is no evidence to show the head injury affected appellant's present abilities at the second punishment hearing to consult with his attorney or to understand the proceedings. *See Moore*, 999 S.W.2d at 395–96; *see also Reed v. State*, 112 S.W.3d 706, 711 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (stating evidence of head injury and mental impairment "alone does not constitute evidence of legal incompetency").

Additionally, appellant relies on his mother's testimony that she admitted him to a health care facility in December 2008 because she feared he might attempt suicide. While hospitalized, appellant was diagnosed with depression. However, a person's past history of depression or mental illness is not an indication of incompetency unless it shows that it impacts the defendant's present ability to understand the proceedings and communicate with counsel. *See Montoya*, 291 S.W.3d at 425 ("We have held that instances of depression are not an indication of incompetency and that past mental-health issues raise the issue of incompetency

only if there is evidence of recent severe mental illness, at least moderate retardation, or bizarre acts by the defendant."); *Brown v. State*, 129 S.W.3d 762, 766 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (concluding defendant's previous mental and behavioral impairments, inability to recall past events, inability to recall circumstances of charged offense, and depression did not raise bona fide doubt as to defendant's competency); *Reeves v. State*, 46 S.W.3d 397, 399–400 (Tex. App.—Texarkana 2001, pet. dism'd) (concluding evidence of defendant's drug addiction and suicide attempt did not reflect on defendant's present ability to understand and participate in proceedings against her); *Townsend v. State*, 949 S.W.2d 24, 27 (Tex. App.—San Antonio 1997, no pet.) (concluding suicidal tendencies and depression did not raise bona fide doubt about defendant's competency). Here, there was no evidence that appellant's history of depression in 2008 affected his abilities to understand the proceedings and to consult with his attorneys in September 2010.

Lastly, appellant points out that it is unclear from the record whether Dr. Rubenzer ever evaluated him.[5] As discussed, on the second day of the new

---

[5] Appellant also mentions that he was required to undergo a mental health evaluation as a term of his community supervision. He indicates that such evaluation was not done before he was adjudicated guilty and incarcerated. However, appellant does not explain how this point supports his assertion that the trial court erred when it did not inquire into his competency at the new hearing on punishment; nor does appellant support the assertion with citation to the record. Thus, appellant's statement does not advance his contention on appeal that the trial court erred. *See* TEX. R. APP. P. 38.1(i)

punishment hearing, the trial court stated on the record that it had made accommodations for Dr. Rubenzer to interview appellant later that day. However, when the hearing resumed on the third day, appellant did not call Dr. Rubenzer to testify, nor did the defense state whether the doctor had examined appellant. It is unknown whether Dr. Rubenzer was unable to examine appellant or whether appellant simply choose not to offer Dr. Rubenzer's testimony following the examination.

Appellant relies on *Reed v. State* in which the court of appeals held that sufficient evidence was admitted at trial to raise a bona fide doubt regarding the appellant's competence. 14 S.W.3d 438 (Tex. App—Houston [14th Dist.] 2000, pet. ref'd). The *Reed* court relied, in part, on the fact that the defense and the State in that case had requested the appellant to undergo a psychiatric examination. *Id.* at 442. The trial court had also ordered that the report from the examination be filed with the court. *See id.* No report was ever filed. *See id.* The court of appeals held that, because it had requested the psychiatric examination, the State was estopped from later claiming there was no evidence to show a bona fide doubt as to appellant's competence. *See id.* In this case, the State made no request to have appellant examined. Thus, *Reed* is distinguishable on its facts.

---

(providing that an appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to the record).

Given the record, the trial court could have reasonably concluded that there was no evidence presented at the new punishment hearing to raise a "bona fide doubt" (1) appellant lacked a rational and factual understanding of the proceedings against him or (2) he did not have the ability to consult his attorney with a reasonable degree of rational understanding. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a), *id*. art. 46B.004(c); *Montoya*, 291 S.W.3d at 425. Therefore, we hold that the trial court did not abuse its discretion in failing to conduct, sua sponte, a competency inquiry or hearing. *See Montoya*, 291 S.W.3d at 425.

We overrule appellant's second issue in each appeal.

## Conclusion

We affirm the judgments of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish. TEX. R. APP. P. 47.2(b).