

## NUMBER 13-13-00663-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**JESSICA KATHLEEN ORELLANA,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

### On appeal from the 24th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Memorandum Opinion by Justice Benavides**

By three issues, appellant Jessica Orellana complains that the trial court erred in accepting her plea of guilty. She states the trial court abused its discretion by not holding a hearing on her motion for new trial, that her plea was involuntary due to her incompetence, and that she received ineffective assistance from her trial counsel. We

affirm.

## I. BACKGROUND

Orellana was charged by indictment with aggravated assault with a deadly weapon, a second degree felony. *See* TEX. PENAL CODE ANN. § 22.02 (West, Westlaw through Chapter 46 2015 R.S.). The State had also included an enhancement paragraph for a prior felony conviction in the indictment. *See Id.* at § 12.42. The victim was Robert Longoria, her child's father. Orellana pleaded guilty to aggravated assault with a deadly weapon on October 2, 2013. *See id.* § 22.02. In exchange for her plea of guilty, the State waived the enhancement paragraph. On October 31, 2013, the trial court held a sentencing hearing and heard testimony from both Longoria and Orellana. Additionally, a pre-sentence investigation report was prepared and the information contained in report was admitted into evidence.

On April 18, 2013, Orellana and her child's father, Robert Longoria, got into an argument when he arrived at her home to drop off their daughter. Longoria testified that Orellana threatened him at her home when he had dropped off their daughter, so he left to return to his home. Shortly thereafter, Orellana and a friend, Johnny Akin, showed up at Longoria's home. Longoria had just arrived and was standing outside his home. Longoria testified that Akin charged at him and they got into a physical altercation. While Akin and Longoria were still fighting, Longoria stated he felt a burning sensation in his buttocks. He turned and saw Orellana standing nearby holding a knife. Longoria was stabbed again in the arm and neck during the scuffle. At one point, Orellana held the knife to Longoria's throat. Orellana's two young children were in the vehicle at the time of this altercation. She was detained and arrested a short time later.

2

While she was in jail awaiting her court hearings, Longoria testified that he went to visit Orellana. During a visit, Orellana told Longoria that she had stabbed him. Orellana also told Stephen, a co-worker who came to visit her, that she had stabbed Longoria.

The trial court sentenced Orellana to eight years in the Texas Department of Criminal Justice—Institutional Division. Orellana filed a motion for new trial, but a hearing was never conducted on the motion. This appeal followed.

## II. MOTION FOR NEW TRIAL

By her first issue, Orellana argues that the trial court committed error by not holding a hearing on her motion for new trial.

### A. Standard of Review and Applicable Law

Appeals courts review "a trial court's denial of a motion for new trial under an abuse of discretion standard." *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). We do not substitute "our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* We reverse "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009).

The "purpose of a hearing on a motion for new trial is to: (1) 'decide whether the cause shall be retried' and (2) 'prepare a record for presenting issues on appeal in the event the motion is denied.'" *Id.* (citing *State v. Gonzalez*, 855 S.W.2d 692, 695 (Tex. Crim. App. 1993) (plurality opinion)). A trial judge would abuse his discretion by failing to hold a hearing "if the motion and accompanying affidavits (1) raise matters not

determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). The "second requirement limits and prevents 'fishing expeditions.'" *Id.* However, a defendant is "not entitled to a hearing on his motion for new trial unless he 'establishes the existence of 'reasonable grounds' showing that the defendant 'could be entitled to relief.'" *Id.* In order to show "reasonable grounds", a defendant must "as a prerequisite to obtaining a hearing and as a matter of pleading, [show that] the motion for new trial…[is] supported by affidavit, either of the accused or someone else" specifically setting out the factual basis for the claim. *Garcia v. State*, 291 S.W.3d 1, 9 (Tex. Crim. App.—Corpus Christi 2008, pet. ref'd). However, affidavits that are "conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required." *Smith*, 286 S.W.3d at 339.

## B. Discussion

Orellana filed a motion for new trial alleging she was not competent when she signed the plea memorandum, her plea was not voluntary due to medication she was taking at the time of her plea, and she received ineffective assistance of trial counsel. Although Orellana's motion was timely filed with the trial court, it did not have affidavits attached to it by either Orellana or another person or any additional documentation that provided any type of evidence to the trial court. Due to the lack of evidence and only the conclusory statements made in Orellana's motion, the trial court did not abuse its discretion in not holding a hearing on her motion. In order to establish grounds not determinable from the record or grounds showing possible entitlement to relief, Orellana

4

needed to file affidavits in support of her motion for new trial. *See Hobbs*, 298 S.W.3d at 199. She did not. Because there was no factual support for her motion for new trial claims, the statements made within the motion were conclusory in nature and not supported by facts. *See Smith*, 286 S.W.3d at 339. Without the proper support for her motion or a showing of good cause for the lack of affidavits, the trial court was not required to hold a hearing on her motion for new trial. Therefore, the trial court did not abuse its discretion. Orellana's first issue is overruled.

### III.   VOLUNTARINESS OF PLEA

By her second issue, Orellana claims her plea was not voluntarily given because she was not competent to enter a plea.

### A.   Standard of Review and Applicable Law

The Texas Code of Criminal Procedure provides that a trial court may accept a guilty plea only if the defendant enters it freely and voluntarily. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(b). "Voluntariness of a plea is determined by the totality of the circumstances." *Lee v. State*, 39 S.W.3d 373, 375 (Tex. App.—Houston [1st Dist.] 2001, no pet.). It is a "due process violation for a trial court to accept a guilty plea without an affirmative showing 'spread on the record' that the guilty plea was intelligently and knowingly made." *Fuller v. State*, 253 S.W.3d 220, 228 (Tex. Crim. App. 2008). The record must "affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* (citing *Brady v. United States*, 397 U.S. 742 (1970)). The Court of Criminal Appeals has also held that "the admonishments embodied in Article 26.13(a) are not constitutionally required because their purpose and function are to assist the trial court in determining that a guilty plea is knowingly and

5

voluntarily entered." *Id*.; *see Carranza v. State*, 980 S.W.2d 653, 656 (Tex. Crim. App. 1998) (en banc).

In Texas, a "defendant is incompetent to stand trial if he does not have 'sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against him." *Fuller*, 253 S.W.3d at 228 (citing TEX. CODE CRIM. PROC. ANN. article 46B.003). A competency hearing is "not required unless the evidence is sufficient to create a *bona fide* doubt in the mind of the judge whether the defendant meets the test of legal competence." *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). Evidence is "sufficient to create a bona fide doubt if it shows 'recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant.'" *Id*. (citing *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003)). However, "evidence of mental impairment alone does not require that a special jury be empaneled where no evidence indicates that a defendant is incapable of consulting with counsel or understanding the proceedings against him." *Moore*, 999 S.W.2d at 395.

### B. Discussion

During the hearing where Orellana pleaded guilty, the trial court used both written and oral admonishments to apprise Orellana of her rights. The trial judge asked her if she freely and voluntarily waived her rights, to which she responded "yes". The written plea admonishments tracked article 26.13 exactly. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13. Under proper admonishments by the trial court, there is a *prima facie* showing the plea was given freely and voluntarily. *See Lee*, 39 S.W.3d at 375. Additionally, there was nothing in the record from the plea hearing that showed that Orellana was

incompetent at the time her plea was given. Orellana was asked if she understood all the written admonishments she signed, one of which included an agreement she was competent. She stated "yes". The trial court had the opportunity to observe Orellana during her court appearances, as well as ask her trial counsel and counsel for the State if they both felt Orellana was competent to plead guilty. Both answered affirmatively. From reading the record and admonishments Orellana signed herself, there is no indication Orellana was incompetent at the time of the plea or sentencing hearing. We overrule Orellana's second issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By her third issue, Orellana alleges that her trial counsel was ineffective because he did not determine if Orellana was competent, failed to assert defensive issues, and because he advised her to plead guilty.

### A. Standard of Review and Applicable Law

In order to succeed on a claim for ineffective assistance of counsel, Orellana must "establish that counsel's performance (1) was deficient, and (2) prejudiced [her] defense" under *Strickland v. Washington*. *Chapa v. State*, 407 S.W.3d 428, 431 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show trial counsel was deficient, "the defendant must prove by a preponderance of the evidence that counsel's representation objectively fell below the standard of professional norms." *Chapa*, 407 S.W.3d at 431. To establish prejudice, "the appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Id.* Additionally, "before the defendant is entitled to a hearing on his motion for new trial alleging ineffective

7

assistance of counsel, a defendant must allege sufficient facts from which a trial court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would be different. *Id.* In order to do this, the "appellant's motion and supporting affidavits must provide reasonable grounds to satisfy the prejudice prong of *Strickland.*" *Id.*

## B. Discussion

Orellana alleges that her trial counsel was ineffective for three reasons: (1) he stood silent while the trial court accepted Orellana's guilty plea before telling her she had the right to remain silent; (2) he should have requested a competency hearing when Orellana stated she has been to a psychiatric hospital in Houston; and (3) Orellana's testimony at the punishment hearing raised defensive issues trial counsel should have properly investigated.

### 1. Plea of Guilt

Orellana's argument complaining about her trial counsel standing silent as the trial court accepted her plea of guilt is perplexing. However, in reviewing the recording from the plea hearing, the trial court did properly admonish Orellana on her right to remain silent prior to approving the orders found in the plea memorandum. All of her rights included in article 26.13 of the Code of Criminal Procedure were found within the plea memorandum which was signed by Orellana, her trial counsel, counsel for the State, and the trial court. Her trial counsel stood silent as the judge admonished Orellana of her rights before accepting the plea, answering when the court directed questions at him, such as his opinion of her competence. Orellana's trial counsel's actions would not fall

8

below the standard of professional norms in a similar situation. On this argument, Orellana fails to satisfy the first prong of the *Strickland* standard. *Strickland*, 466 U.S. at 667.

### 2. Competency Hearing

Next, Orellana complains that trial counsel was ineffective for not requesting a competency hearing when she stated to him that she had just left a psychiatric hospital shortly before her plea of guilt. During the punishment hearing, Orellana testified in her own defense. Trial counsel elicited answers from Orellana regarding her mental status at the time of her plea. He asked:

| | |
|---|---|
| Trial Counsel: | On the day that you pled, you and I had a discussion and I asked, "Are you okay, feeling mentally competent," and you said you were doing all right; is that correct? |
| Orellana: | I told you I was okay. |
| Trial Counsel: | Why is that? |
| Orellana: | I just went and got some help for myself and I just got released from a psychiatric hospital in Houston. For two years, I wasn't in my right mind. A couple of days after that, my medicine started to work better and – My medicine was working better and I wanted to believe – |
| Trial Counsel: | Now, you remember the day you pled? |
| Orellana: | Yes sir. |

Orellana's own statements to her trial counsel show he was aware she suffered from some sort of psychiatric problem, but that Orellana was competent to plead guilty. Orellana remembered the conversation she had with her trial counsel before her plea of guilty. Orellana was able to testify in her own defense during the punishment hearing.

Her trial counsel told the trial court during the plea that he found her to be competent. It is clear from the facts surrounding the two hearings that trial counsel was aware of some sort of mental issues, but did not feel it affected Orellana's competency in regards to her understanding of the current case. Based on his questions to Orellana both of the day she pleaded guilty and during the punishment hearing, it seems clear he did not suspect incompetency and it would not be unreasonable for him to not request a hearing to determine competency. Trial counsel's action do not fall below the standard of professional norms and Orellana does not satisfy the first prong of the *Strickland* test. *See Strickland*, 466 U.S. at 667

### 3. Defensive Issues

Third, Orellana complains that her testimony at the punishment hearing raised defensive issues that her trial counsel should have investigated and presented at trial. Orellana had waived her right to a jury trial at the prior hearing where she pled guilty. She now asserts that her testimony could have given her a self-defense and defense of a third person instruction that entitles her to relief. However, that is not the case.

Orellana testified that Longoria had initially gone to her house and confronted her, but left. Orellana then stated that she and Akin travelled to Longoria's home to damage his property and got into a physical altercation with him there. The State cross-examined Orellana as to why she was at Longoria's property, and she stated she "went there to break his mother's back windshield." Based on Orellana's own testimony, she would not be entitled to a self-defense instruction. *See* TEX. PENAL CODE ANN. §§ 9.31, 9.32, 9.33. In order to be entitled to this, Orellana could not have gone to confront the victim or be engaged in any offense above a Class C misdemeanor. *Id.* Orellana's trial counsel

10

most likely understood that there were no defensive issues to present to a jury and advised Orellana that pleading guilty was her best remedy, since she admitted she stabbed Longoria. Therefore, Orellana's trial counsel's actions did not fall below the standard of professional norms. Orellana cannot show the court that but for her claimed deficient actions of trial counsel, the outcomes of the case would have been different, and does not satisfy the first prong of the *Strickland* standard. *See Strickland*, 466 U.S. at 667. We overrule Orellana's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
16th day of July, 2015.