

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00142-CR
No. 02-25-00144-CR

_____

MARCUS JOHNSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 16th District Court
Denton County, Texas
Trial Court Nos. F24-3486-16 and F24-3487-16

Before Kerr, Womack, and Walker, JJ.
Opinion by Justice Walker

## OPINION

## I. INTRODUCTION

Appellant Marcus Johnson was charged by indictment with two counts of aggravated sexual assault of a child and three counts of aggravated sexual assault. *See* Tex. Penal Code Ann. § 22.021. On the morning of his trial, Johnson pleaded guilty before the trial court to all five counts. He waived his right to a jury trial as to the matter of his guilt but requested that a jury assess his punishment. The trial court accepted his pleas and found him guilty, and a jury was then empaneled to determine his punishment. Johnson pleaded guilty before the jury, and following a punishment trial, the jury assessed his punishment—for each count—at life imprisonment and a $10,000 fine. The trial court sentenced Johnson in accordance with the jury's verdicts and ordered the sentences to run concurrently.

Johnson raises two issues on appeal. First, he argues that the trial court erred by sentencing him "without first a finding of guilt by the jury." Second, he contends that the trial court erred by including the $10,000 fine for each count in the judgments, including the fines in the bills of costs, prematurely assessing $15 time-payment fees, and including items of cost that are not yet due and payable in the bills of costs.

Because (1) the trial court adjudicated Johnson's guilt before the imposition of the jury's assessed punishments and (2) the jury assessed a $10,000 fine for each count, we will affirm the trial court's judgments. But because both of the trial court's

2

bills of costs are erroneous, we will modify them to delete the complained-of fines and time-payment fees and to clarify that the itemized court costs and fees are not yet due.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On the morning of October 21, 1993, a fifteen-year-old girl was dropped off by a friend's mother at North Lakes Park in Denton. While the girl sat in the park waiting for her friends to arrive, a black male came up from behind her. The man grabbed the girl, claimed that he had a gun, dragged her into a wooded area, and sexually assaulted her. Following the sexual assault, the man explained that he had to kill her, but the girl pleaded for her life. The man ultimately let the girl go, and she went to her school and reported the sexual assault. She was transported to a hospital, and a vaginal swab was collected. Spermatozoa were detected on the swab, and a DNA profile was later obtained.[1] Despite law enforcement's efforts, the man remained unidentified.

Nearly four years after the 1993 sexual assault, on September 9, 1997, a twenty-six-year-old woman was at North Lakes Park while on her lunch break. As she was walking along the park trail, a black male came up from behind her. The man grabbed the woman and sexually assaulted her. Following the sexual assault, the man left the park, and the woman located help. She was transported to a hospital, and her clothes

_____

[1]The DNA profile was not obtained until March 1998.

3

were collected by law enforcement. Spermatozoa were detected on the woman's clothes, and a DNA profile was obtained. Law enforcement discovered that the DNA profile found on the woman's clothes matched the DNA profile from the girl's vaginal swab. In November 1998, the DNA profile was entered into CODIS.[2]

Twenty-five years elapsed, and the man remained unidentified. In March 2023, following law enforcement's use of familial DNA testing on the DNA profile, the daughter of the male assailant was identified.[3] Law enforcement obtained her birth certificate and discovered that Johnson was her father and that he had lived near North Lakes Park at the time of the sexual assaults.

Law enforcement then located Johnson in Las Vegas, Nevada and requested the FBI's assistance. The FBI began surveilling Johnson, and in May 2023, FBI special agents followed him to a golf course. Posing as golfers, special agents accompanied Johnson throughout the course and observed him repeatedly drinking from an orange Gatorade bottle. Johnson eventually discarded the bottle in a public trash can, and special agents retrieved it.

---

[2]"CODIS" stands for "Combined DNA Index System." *Segundo v. State*, 270 S.W.3d 79, 83 n.3 (Tex. Crim. App. 2008); *see also* Tex. Gov't Code Ann. § 411.141(1) ("'CODIS' means the FBI's Combined DNA Index System" and "includes the national DNA index system sponsored by the FBI").

[3]During the case's pendency, law enforcement was awarded a "Sexual Assault Kit Initiative" grant, which allowed them to explore new investigative techniques in unsolved cases. Here, the grant funded genealogical genetic testing on the DNA profile found on the woman's clothes.

A swab was taken from the bottle and compared to the previously obtained DNA profile from the woman's clothing. The DNA report from the bottle swab showed that "the probability of obtaining this mixture profile, if the DNA came from the [woman] and Marcus Johnson, is 1.69 octillion times greater than the probability of obtaining the profile if the DNA came from the [woman] and one unrelated unknown individual."

Following the DNA report from the bottle, both cases were presented to a grand jury, which indicted Johnson for the October 1993 sexual assault and the September 1997 sexual assault.[4] Johnson was arrested, and law enforcement, pursuant to a search warrant, collected a buccal swab from him. The buccal swab was submitted for analysis and comparison to the DNA profile from the woman's clothing. The DNA report from the buccal swab showed that the "probability of obtaining the mixture profile, if the DNA came from the [woman] and Marcus Johnson, is 2.35 octillion times greater than the probability of obtaining the profile from the [woman] and one unrelated, unknown individual."

Johnson's cases were set for trial. On the morning of his trial—prior to voir dire—his trial counsel informed the trial court that Johnson intended to plead guilty to all five counts and wanted to have a jury assess his punishment. Johnson had

---

[4]In trial cause number F24-3486-16—the October 1993 assault—Johnson was indicted for two counts of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021. In trial cause number F24-3487-16—the September 1997 assault—he was indicted for three counts of aggravated sexual assault. *See id.*

previously filed an election to have a jury assess his punishment and an application for community supervision. The trial court then admonished Johnson, determined that he was competent, determined that the waiver and pleas were freely and voluntarily given, read all of the counts in both indictments, and accepted a plea of guilty from him to each count in each indictment. Johnson then signed a written waiver of a jury trial as to guilt, a judicial confession and guilty plea, and a request for a jury to assess his punishment in each case.

The trial court signed the waiver, found Johnson competent, approved the waiver, found that his pleas and waiver were freely and voluntarily given, accepted his pleas of guilty, and found him guilty. A jury was empaneled to determine Johnson's punishment, and he pleaded guilty before the jury. The State and the defense presented evidence, and the trial court charged the jury on punishment for each case.

Both charges informed the jury that Johnson had pleaded guilty, had persisted in pleading guilty notwithstanding the trial court's admonishments, and appeared to be mentally competent and that his pleas had been accepted by the trial court. After instructing the jury on the appropriate punishment ranges, the trial court informed the jury that it was its duty to set the punishment that should be assessed against Johnson.[5]

---

[5]The trial court's jury charges asked questions of punishment only.

For each count, the jury assessed Johnson's punishment at life imprisonment and a $10,000 fine. The trial court sentenced him accordingly and ordered the sentences to run concurrently. The trial court's written judgments stated, among other things, "JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL," "PUNISHMENT ASSESSED BY JURY RECEIVE LIFE IN TDCJ / $10,000 FINE PER EACH COUNT," and "THIS SENTENCE SHALL RUN: CONCURRENTLY." Both written judgments also directed Johnson to pay court costs and fees after his release from confinement.

In trial court cause number F24-3486-16, the bill of costs aggregated the $10,000 fines for each of the two counts, reflecting a general fine of $20,000. In trial court cause number F24-3487-16, the bill of costs likewise aggregated the $10,000 fines for each of the three counts, reflecting a general fine of $30,000. Each bill of costs also contained a time-payment fee of $15 but did not contain language that the court costs were not due until Johnson's release from confinement.

Johnson filed these appeals.

### III. DISCUSSION

#### A. THE VERDICTS

In his first issue, Johnson claims that the record is "devoid of a finding of guilt" and that he was "sentenced to [l]ife imprisonment with no finding of guilt prior to those sentences being imposed." Consequently, he contends that his constitutional and statutory rights were violated. *See* U.S. Const. amends. V, VIII, XIV; Tex. Code

7

Crim. Proc. Ann. arts. 1.04, 1.09. In the alternative, he asserts that the trial court erred by failing to instruct the jury to find him guilty.

Johnson's assertions—that he was sentenced without a finding of guilt and that his constitutional and statutory rights were violated—are unfounded and without merit. Because he has seemingly overlooked the record, we will recount the sequence of events that led to the trial court's adjudication of his guilt and the jury's assessment of his punishment.

## 1. Sequence of Events

On the morning of his trial—prior to voir dire and the jury's empanelment—Johnson pleaded guilty before the trial court to every count in both cases. The following exchange ensued between the trial court and Johnson:

> THE COURT: All right. Mr. Johnson, you understood that you had a right to a jury trial for both the guilt/innocence phase of this trial as well as the punishment phase, correct?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you have, in fact, waived your right to have a jury determine whether or not you were guilty or not guilty of these charges as contained in these two indictments; is that correct?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you made that decision after having consulted with your counsel and understanding the consequences of not having a jury determine whether or not you're guilty?
>
> THE DEFENDANT: Yes, ma'am.

THE COURT: You understand that a jury could hear the facts of this case and determine based on the evidence that you are not guilty of these offenses that have been alleged in the indictments?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you have waived your right to a jury determination of those issues, and you wish to proceed to a jury trial on the issue of punishment only; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: And have you freely and voluntarily given up your right to have a jury trial with respect to the guilt/innocence phase of the trial?

THE DEFENDANT: Yes, ma'am.

Thereafter, the trial court brought in the venire panel for voir dire and explained to the panel that

[t]he Defendant in this case has already pled guilty to these charges. And so a jury that will be [empaneled] in this case will only be tasked with assessing punishment as to these two cases.

You will still hear a lot of evidence, but the issue of whether or not a person is guilty or not will not be something that the jury that is [empaneled] in this case will be asked to decide. They will only be asked to decide the punishment.

The State then began its voir dire and explained that "[i]n this particular case, we're not going to have a guilt/innocence phase. The Defendant pled guilty."[6] Following the State's voir dire, the venire panel was excused for lunch. Sometime during the lunch break, Johnson signed written plea admonishments—containing a

---

[6]The State limited its voir dire to questions regarding a punishment trial.

9

waiver of jury as to guilt, guilty plea, and request for a jury to assess punishment—in which he admitted and judicially confessed that he was guilty of the charged offenses. The written plea admonishments memorialized that Johnson had "in writing, and in open court waive[d] the right to trial by jury <u>as to the matter of guilt only</u> and request[ed] the Court to consent to and approve this waiver." Johnson, his trial counsel, the State, and the trial court signed the plea admonishments. The trial court's portion of the admonishments read:

> It clearly appearing to the Court that the Defendant is mentally competent and is represented by competent counsel and that said Defendant understands the nature of the charge against the Defendant and that the Defendant has been warned by the Court of the consequences of the plea entered herein including the minimum and maximum punishment provided by law, that the Defendant, attorney for Defendant and the attorney for the State consent to and approve the waiver of trial by jury. The Court, therefore, consents to and approves the Defendant's waiver of jury <u>as to the matter of guilt only</u> in this cause and finds such plea, and all waivers, agreements and consents contained herein to be freely and voluntarily made, and accepts the Defendant's plea of GUILTY.

The trial court then once more addressed Johnson's pleas, explaining that it was concerned that it had "missed something earlier" when it had initially taken his guilty pleas.

> [THE COURT]: Previously, you entered your guilty plea as to all of the counts in both of these causes of action, correct?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right. And you waived your right to a jury trial on the guilt/innocence portion of trial, correct?

10

THE DEFENDANT: Yes, ma'am.

THE COURT: And you gave up that right freely and voluntarily, correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you understand that you do still have the right to appeal your -- any sentence that this jury might hand down?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. The Court will find that you have freely and voluntarily entered your plea of guilt as to each of the counts in the causes of action that are before the Court. Does the State have any evidence as to the guilt of Mr. Johnson?

[THE STATE]: Yes. We would offer into evidence the Defendant's judicial confession. It's in the signed documents that he signed.

THE COURT: Yes. And the Court does have that. And it has been bench filed. And so the Court will find that the evidence substantiates Mr. Johnson's plea of guilt in Cause Number F24-3487-16 and Cause Number 24-3486-16, and *will find him guilty of the offenses as charged* in those indictments.[7]

Aggravated sexual assault, Counts I and Counts II in Cause Number 3486, and aggravated sexual assault Counts I, II, and [III] in Cause Number F24-3487-16. *Having found Mr. Johnson guilty of both cause numbers and those counts contained therein*, the Court will hold his bond insufficient.

[Emphasis added.]

When the venire panel returned from lunch, Johnson's counsel conducted her

voir dire and reiterated that "Mr. Johnson has pled guilty to both of the cases here.

---

[7]The written judgments also evidence that the trial court adjudicated Johnson's guilt. Each written judgment provides: "JUDGMENT OF CONVICTION BY COURT—WAIVER OF JURY TRIAL."

It's y'all's job, like Judge said, to assess punishment in your range . . . ."[8]  After the defense's voir dire, the parties made their strikes, and the trial court empaneled and swore in the jury.

The following morning, the trial court explained to the jury that "the punishment phase of this trial is what you will be considering, hearing evidence for, and rendering a verdict on."  In the presence of the jury, the State read the indictments for both cases, and for each count, Johnson again pleaded guilty.

At the close of punishment, the trial court charged the jury on questions of punishment only, to which Johnson did not object, and the first page of the charge in trial court cause number F24-3486-16 read:[9]

> The Defendant, MARCUS JOHNSON, is charged with the offense Aggravated Sexual Assault (Counts I and II), alleged to have been committed in Denton, County, Texas, on or about the 21st day of October, 1993.  To this charge the Defendant has pled GUILTY.
>
> He has persisted in entering his plea of guilty, notwithstanding that the Court, as required by law, has admonished him of the consequences.  It plainly appearing to the Court that the defendant is mentally competent, and that he is not influenced to make said plea by any consideration of

---

[8]Like the State, Johnson's counsel limited her voir dire to questions regarding a punishment trial.

[9]The language in the jury charge in trial court cause number F24-3487-16 mirrored that found in F24-3486-16 but was tailored to its related indictment:  "The defendant, MARCUS JOHNSON, is charged with the offense Aggravated Sexual Assault (Counts I, II and III), alleged to have been committed in Denton County, Texas, on or about the 9th day of September, 1997.  To this charge the Defendant has pled GUILTY."

fear, persuasion, or any delusive hope of pardon prompting him to confess his guilt, his plea is by the Court received.

. . .

It now becomes your duty to set the punishment which should be assessed against this Defendant.

The jury returned its verdicts, and for each count, it assessed Johnson's punishment at life imprisonment and a $10,000 fine.

## 2. Findings of Guilt

Johnson contends that his constitutional and statutory rights were violated because the jury did not make findings of guilt. In support of this contention, he cites Article 1.15 of the Texas Code of Criminal Procedure, which provides that

> [n]o person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14; provided, however, that it shall be necessary for the state to introduce evidence[10] into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment . . . .

Tex. Code Crim. Proc. Ann. art. 1.15.

Johnson grounds his complaint in the initial half of the first sentence of Article 1.15—that he cannot "be convicted of a felony except upon the verdict of a

---

[10]"A judicial confession, standing alone, is sufficient to sustain a conviction upon a guilty plea and to satisfy the requirements of [A]rticle 1.15 so long as the judicial confession covers all of the elements of the charged offense." *Dowden v. State*, 455 S.W.3d 252, 255 (Tex. App.—Fort Worth 2015, no pet.) (citing *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009)).

13

jury duly rendered and recorded." *Id.* However, he neglects the text that follows the comma—"unless the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing." *Id.*

Contrary to Johnson's claim that "[t]here is no finding of guilt in either of the matters pending before this Court," the record assuredly contains an adjudication of his guilt. Prior to the jury's empanelment, Johnson waived his right of trial by jury in writing "as to the matter of guilt only," and the trial court found "that the evidence substantiate[d his] plea of guilt in Cause Number F24-3487-16 and Cause Number 24-3486-16[ ] and . . . *[found] him guilty of the offenses as charged in those indictments*." [Emphasis added.] The record is clear: Johnson unequivocally waived—as evidenced by the written and oral plea admonishments—his right to have a jury determine his guilt, and the trial court adjudicated his guilt.[11] *See Villela v. State*, 564 S.W.2d 750, 751 (Tex. Crim. App. [Panel Op.] 1978) (holding that trial court had implicitly found guilt by its actions and that they, therefore, supported the written judgment).

This is not a case where a defendant initially pleaded guilty before the jury or changed his plea during trial from not guilty to guilty, distinguishing the facts of this case from those in *In re State ex rel. Mau v. Third Ct. of Appeals*, 560 S.W.3d 640, 647 (Tex. Crim. App. 2018). In *Mau*, the appellant did not waive his right to a jury trial,

---

[11]Johnson has not alleged that his pleas were not in accordance with Articles 1.13 and 1.14 of the Texas Code of Criminal Procedure. *See id.* arts. 1.13 (waiver of trial by jury), 1.14 (waiver of rights).

and the State never gave written consent to his waiving a jury trial. *Id.* at 642. The case therefore proceeded to a jury trial on the appellant's plea of not guilty. *Id.* "A jury was selected, sworn, [and] seated and testimony was initiated. During the course of that testimony, the [appellant] elected to change his plea[,] and he did enter on the record in front of the jury a plea of guilty to the charge." *Id.* at 643. "The trial court then instructed the jury to return a guilty verdict predicated upon the [appellant's] guilty plea, which the jury did." *Id.* at 642. The Court of Criminal Appeals explained that in such a scenario, "the appropriate procedure is to instruct the jury to return a guilty verdict." *Id.* at 645 n.8.

Unlike the appellant in *Mau*, from the very inception of his trial, Johnson pleaded guilty before the trial court, and the trial court adjudicated his guilt on each and every count. Here, because the trial court had found Johnson guilty prior to the jury's empanelment, his guilt was never at issue before the jury.[12] Accordingly, we hold that Johnson's constitutional and statutory rights were not violated.

_____

[12]We note that while this procedure is infrequently raised on appeal, it is not novel in practice, and we have found no such authority that prohibits it. *See, e.g.*, *Guerrero v. State*, No. 11-96-00143-CR, 1998 WL 34193658, at \*1 (Tex. App.—Eastland Aug. 26, 1998, pet ref'd) (not designated for publication) ("At the hearing on appellant's plea, the trial court further admonished appellant, found appellant's plea to be voluntary, accepted the plea, and found appellant guilty. The trial court also noted that appellant desired to have a jury assess his punishment. Subsequently, a jury was impaneled to assess appellant's punishment.").

Although a criminal defendant has no constitutional right to have a jury determine punishment, *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006), he does have the statutory right in Texas to elect to have a jury assess his punishment,

15

With respect to his alternative complaint that the trial court failed to instruct the jury to find him guilty, we conclude that the trial court did not err in its jury charge. The trial court must "deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14; *see Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). The trial court is responsible for the accuracy of the charge and accompanying instructions. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Appellate review of purported jury charge error involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). We initially determine whether the jury instruction is erroneous. *Id.* Then, if error occurred, we must analyze the error for harm. *Id.*

Johnson has cited no authority—nor have we found any—for the proposition that when a trial court has adjudicated a defendant's guilt before empaneling a jury, it must then instruct that jury to make a duplicative finding of guilt. As we discussed above, Johnson's guilt was never at issue before the jury. We thus conclude that the

*see* Tex. Code Crim. Proc. Ann. arts. 26.14, 37.07, § 2(b). "Where a defendant in a case of felony persists in pleading guilty or in entering a plea of nolo contendere, if the punishment is not absolutely fixed by law, a jury shall be impaneled to assess the punishment." *Id.* art. 26.14. Here, Johnson persisted in his pleas of guilty and did not waive his statutory right to have a jury assess his punishment. The written plea admonishments explicitly limited his jury-trial waiver to the matter of his guilt, and he repeatedly requested for a jury to assess his punishment. Moreover, as evidenced by the plea admonishments, the State and trial court alike consented and approved Johnson's request for a jury to assess his punishment. And following the trial court's adjudication of Johnson's guilt, the State did not object to a jury's assessing his punishment. Thus, while recognizing the uncommon nature of the sequence of events in this case, we see no irregularity in the procedure followed by the trial court.

16

trial court did not err by failing to instruct the jury to return a guilty verdict because it was not "law applicable to the case" for punishment purposes. *See Eberhardt v. State*, 437 S.W.3d 582, 583 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding it was not error, much less reversible error, when no such instruction was given). Because there are findings of guilt by the trial court, we reject Johnson's argument that the trial court erred by failing to instruct the jury to find him guilty.[13]

But even if a duplicative finding of guilt by the jury was required, Johnson's claim nonetheless lacks merit.[14] It is well established that when a defendant has pleaded guilty to a felony before a jury, no issue of guilt remains for the factfinder to determine. *Holland v. State*, 761 S.W.2d 307, 313 (Tex. Crim. App. 1988); *see In re State ex rel. Tharp*, 393 S.W.3d 751, 757 (Tex. Crim. App. 2012) (a plea of guilty to a jury eliminates guilt as an issue to be determined). For purposes of due process, a plea of guilty substitutes for a jury verdict of guilt and is itself a conviction. *Fuller v. State*, 253 S.W.3d 220, 227 (Tex. Crim. App. 2008). Like a jury's verdict, a plea of guilty is

---

[13]Because we hold that the trial court's jury charges were not erroneous, we do not proceed to the second step to analyze the alleged error for harm. *Kirsch*, 357 S.W.3d at 649.

[14]Citing to Article 37.07 of the Texas Code of Criminal Procedure, Johnson argues that the trial court erred by sentencing him without a guilty verdict from the jury. *See* Tex. Code Crim. Proc. Ann. art. 37.07. However, his reliance on Article 37.07 is misplaced. Article 37.07, authorizing a separate hearing on punishment, is applicable only to pleas of not guilty before a jury and has no application where the defendant waives his trial by jury and enters a plea of guilty before the trial court. *Morales v. State*, 416 S.W.2d 403, 405 (Tex. Crim. App. 1967).

conclusive and nothing more is required but to give judgment and sentence. *Id.* "When a defendant pleads guilty to a jury, the jury need not return any verdict of guilty. The case simply proceeds with a unitary punishment hearing." *Id.* Because Johnson also pleaded guilty before the jury, we conclude that no further finding of guilt by the jury was required.

Accordingly, because his guilt was adjudicated by the trial court prior to the imposition of the jury's sentences, we hold that Johnson's constitutional and statutory rights were not violated and that the trial court's jury charges were not erroneous. And even if a subsequent finding of guilt was required, we hold that Johnson's guilty pleas before the jury were themselves convictions and thus dispensed with any need for the jury to have returned express guilty verdicts.[15] *See Fuller*, 253 S.W.3d at 227. Even in that alternative scenario, we hold that the trial court's sentencing did not violate Johnson's constitutional and statutory rights.

We overrule Johnson's first issue.

---

[15]We note that even though Johnson's guilt—by way of his pleas and judicial confession—was conclusive, the trial court's charges demonstrate that the jury also made findings of guilt. The trial court's charges instructed the jury that it had received Johnson's pleas of guilt, and each verdict form stated, "We, the jury, having found the Defendant, [Marcus Johnson], guilty . . . ." Thus, the charges effectively instructed the jury on Johnson's guilt, and the available verdict forms required the jury to make a finding of guilt. In any event, not only did the trial court find him guilty but evidently the jury attempted to do the same by making findings of guilt as well.

18

## B. FINES AND BILLS OF COSTS

Johnson's second issue substantively consists of four sub-issues related to the imposed fines and the contents of the bills of costs. In his first sub-issue, Johnson maintains that, because his sentences were ordered to run concurrently, the trial court erred by entering a fine for each count and that the judgments should be reformed to reflect a unitary fine. In his second through fourth sub-issues, Johnson contends that the bill of costs in each case erroneously (1) includes the assessment of the fines and (2) includes the assessment of a time-payment fee and "fail[s] to include [(3)] language in conformity with the delayed payment option set forth in both judgments." The State (1) argues that "despite the fines running concurrently, the judgments should not be reformed" but (2) concedes that both bills of costs should be modified to delete the fines, strike the time-payment fee, and include a statement showing that the court costs are not due until Johnson is released from confinement. We agree with the State on each sub-issue.

### 1. Concurrent Fines in the Judgments

In his first sub-issue, Johnson challenges the trial court's inclusion of all the jury-imposed fines in the written judgments.

"A fine is punitive in nature and is part of a defendant's sentence." *Anastassov v. State*, 664 S.W.3d 815, 822 (Tex. Crim. App. 2022); *see Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). "[T]he concurrent sentences provision of Section 3.03(a) [of the Texas Penal Code] applies to the entire sentence, including fines." *State*

19

*v. Crook*, 248 S.W.3d 172, 177 (Tex. Crim. App. 2008). Therefore, in concurrent sentences, the fines "discharge in the same manner as concurrent terms of confinement—the defendant pays the greatest amount of the fine but receives credit for satisfying all of the multiple concurrent fines." *Anastassov*, 664 S.W.3d at 822.

Here, the trial court's judgments provide that Johnson's sentences shall run concurrently. Consequently, Johnson maintains that the "judgments should be reformed by this court to reflect the proper amount." In other words, because the judgments reflect a $10,000 fine for each count, Johnson requests this court to delete his concurrent multiple $10,000 fines to reflect a single unitary fine of $10,000. The law does not support his request.

The $10,000 fines in these cases were part of the sentences properly assessed by the jury and rendered by the trial court, were within the permissible range of punishment, and were thus required to be included in the written judgments. *See* Tex. Code Crim. Proc. Ann. art. 42.01, § 1(9). Nothing about the fact that Johnson's fines are to be discharged concurrently changes this. Contrary to Johnson's argument, the trial court's inclusion of the concurrent fines in the judgments was not erroneous and did not improperly signal that the fines will be discharged consecutively. The trial court's judgments in this case properly reflect that Johnson's sentences—including the fines—shall be served "concurrently," thereby signaling that the fines will be discharged jointly. *See Crook*, 248 S.W.3d at 177; Tex. Penal Code Ann. § 3.03(a). Therefore, we lack the authority to alter the jury's lawful verdicts by deleting or

20

modifying the $10,000 fines from the judgments. *See Anastassov*, 664 S.W.3d at 822.

Accordingly, we overrule Johnson's first sub-issue.

## 2. The fines should not have been included in the bills of costs

In his second sub-issue, Johnson contends that the bills of costs improperly include the $10,000 fines. The State has conceded the mistake.

A bill of costs must contain "items of cost." Tex. Code Crim. Proc. Ann. art. 103.001(b). Unlike the items of cost typically included in a bill of costs, which are nonpunitive and are intended to recoup judicial resources expended in connection with the trial of the case, fines are punitive and constitute part of a convicted person's sentence. *See Armstrong*, 340 S.W.3d at 767; *Anastassov*, 664 S.W.3d at 823 ("A fine is not a court cost or fee; it is part of the punishment.").

Because fines are fundamentally different from court costs, they should not be included in the bill of costs. *See Williams v. State*, 495 S.W.3d 583, 591 (Tex. App.—Houston [1st Dist.] 2016) (op. on reh'g), *pet. dism'd, improvidently granted*, No. PD-0947-16, 2017 WL 1493488 (Tex. Crim. App. Apr. 26, 2017); *see also Cornelio v. State*, No. 12-24-00279-CR, 2025 WL 657302, at *2 (Tex. App.—Tyler Feb. 28, 2025, no pet.) (mem. op., not designated for publication).

Accordingly, we sustain Johnson's second sub-issue and modify each bill of costs to delete all the fines. *See Pruitt v. State*, 646 S.W.3d 879, 883 (Tex. App.—Amarillo 2022, no pet.) (holding that a court of appeals has authority "to modify a bill of costs independent of finding an error in the trial court's judgment"); *see also Jones v.*

*State*, 691 S.W.3d 671, 679 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd) (rejecting State's argument that the court of appeals lacked jurisdiction to modify bills of costs). Johnson nevertheless remains obligated to pay the unitary $10,000 fine as set forth in the judgments of conviction. *See Williams*, 495 S.W.3d at 591.

### 3. The time-payment fee was prematurely assessed

In his third sub-issue, Johnson contends that the time-payment fee was prematurely assessed and should be deleted from both bills of costs. The State has conceded the error.

The Texas Code of Criminal Procedure requires a person convicted of an offense to pay a $15 reimbursement fee if the person fails to pay any part of a fine, court costs, or restitution within thirty days after the entry of a judgment ordering such payment. *See* Tex. Code Crim. Proc. Ann. art. 102.030. However, a pending appeal suspends a convicted person's duty to pay fines, court costs, and restitution because the duty to pay is triggered only by a final judgment. *Dulin v. State*, 620 S.W.3d 129, 133 (Tex. Crim. App. 2021). Thus, the pendency of an appeal "stops the clock" for purposes of the time-payment fee. *Id.* Accordingly, if a trial-court clerk assesses a time-payment fee before the issuance of the appellate mandate, such assessment is premature. *Id.*; *Pruitt*, 646 S.W.3d at 886.

Here, Johnson filed his notice of appeal on May 9, 2025, and the trial-court clerk assessed the time-payment fee in its bills of costs on June 4, 2025. In light of the authorities cited above, we agree with Johnson and the State that the time-payment

22

fee was prematurely assessed. *See* Tex. Code Crim. Proc. Ann. art. 102.030; *Dulin*, 620 S.W.3d at 133; *Pruitt*, 646 S.W.3d at 886. Accordingly, we sustain Johnson's third sub-issue and modify both bills of costs to delete the time-payment fees. *See Jones*, 691 S.W.3d at 679; *Pruitt*, 646 S.W.3d at 883. Our ruling is without prejudice to future assessment of the time-payment fee if, more than thirty days after mandate issues, Johnson fails to completely pay any fine, court costs, or restitution that he owes. *See Dulin*, 620 S.W.3d at 133; *Cornelio*, 2025 WL 657302, at *2.

### 4. The remaining costs itemized in the bills of costs are not yet due

In his fourth sub-issue, Johnson contends that both bills of costs should be modified to include the language that any costs are not due until he is released from confinement. The State agrees.

Article 42.15(a-1) of the Texas Code of Criminal Procedure provides that if, in imposing a felony sentence, the trial court determines that "the defendant does not have sufficient resources or income to immediately pay all or part of the fine and costs, the court shall determine whether" they should be fully or partially waived, discharged by community service, "required to be paid at some later date or in a specified portion at designated intervals," or discharged by any combination of these three choices. Tex. Code Crim. Proc. Ann. art. 42.15(a-1), (b)(2) (providing that the court may allow the defendant "to pay the entire fine and costs at some later date").

A majority of Texas intermediate appellate courts, including this one, have held that a trial court's assessment of costs, fees, or both in a judgment together with its

23

selection of the "Delayed Payment Option" indicates that the trial court implicitly determined that the defendant was not, at the time of the sentence's imposition, immediately able to pay the judgment's assessed costs and fees. *See Ramirez v. State*, No. 02-24-00224-CR, 2025 WL 1350046, at *2 (Tex. App.—Fort Worth May 8, 2025, no pet.) (mem. op., not designated for publication); *Gates v. State*, No. 02-23-00004-CR, 2024 WL 482436, at *4 (Tex. App.—Fort Worth Feb. 8, 2024, no pet.) (mem. op., not designated for publication). Here, the trial court selected the Delayed Payment Option on its judgments.

Accordingly, we sustain Johnson's fourth sub-issue and modify both bills of costs to include a statement that—in accordance with the trial court's judgments—the assessed costs are not due until Johnson is released from confinement. *See* Tex. Code Crim. Proc. Ann. art. 42.15(b).

We overrule in part and sustain in part Johnson's second issue.

## IV. CONCLUSION

Having overruled Johnson's first issue and having overruled in part and sustained in part his second issue, we modify both bills of costs to (1) delete the $10,000 fines; (2) delete the $15 time-payment fee without prejudice to future assessment; and (3) include a statement that the assessed costs and fees are not payable by Johnson until his release from confinement, in accordance with the language in the trial court's judgments. Subject to these modifications to both bills of costs, we affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/ Brian Walker

Brian Walker
Justice

Publish

Delivered:  December 11, 2025